**Edward KILLEBREW, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 49A05–0905–CR–246.

Court of Appeals of Indiana.

April 6, 2010.

Transfer Denied June 17, 2010.

John Pinnow, Greenwood, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Richard C. Webster, Deputy At-

torney General, Indianapolis, IN, Attorney for Appellee.

## OPINION

BARNES, Judge.

### Case Summary

Edward Killebrew appeals his convictions for Class B felony dealing in cocaine and Class A misdemeanor resisting law enforcement. We reverse and remand.

### Issue

The sole issue before us is whether the trial court erred in denying Killebrew's objection to the State's use of peremptory challenges to strike all African–Americans from the jury venire.

### Facts

On August 14, 2008, the State charged Killebrew, an African–American, with Class A felony dealing in cocaine, Class B felony possession of cocaine, and Class A misdemeanor resisting law enforcement. Jury selection for Killebrew's trial in Marion County was held on March 10, 2009. Five African–Americans were called as part of the jury venire, and the State utilized peremptory challenges to strike all five of them. The State struck M.O. because a criminal background check revealed she had been the subject of five police reports, and it struck K.M. because he was a convicted felon. The State struck A.S. because she was a nurse, and the deputy prosecutor asserted he had a policy of always striking nurses because they were too compassionate. D.R. was stricken after he said his great-nephew had been convicted of drug dealing and he believed the police had acted unfairly in that case; by contrast, a white juror who was not stricken had asserted on his jury questionnaire that he thought his cousin had been unfairly convicted of a crime, and that he did not think he could be a fair and

impartial juror.[1] Finally, the State struck L.S., asserting that he had been too "emphatic" in agreeing with how defense counsel had described the State's burden of proof in criminal cases. Tr. p. 449. Killebrew objected to these strikes, in particular those of D.R. and L.S., as being racially discriminatory in violation of *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). The trial court overruled the objection and proceeded to trial.

The jury found Killebrew guilty of Class B felony dealing in cocaine as a lesser-included offense of the A felony charge, Class B felony possession of cocaine, and Class A misdemeanor resisting law enforcement. The trial court did not enter judgment of conviction on the possession of cocaine guilty verdict and proceeded to sentence Killebrew for the other two charges. Killebrew now appeals.

### Analysis

 Killebrew's sole challenge to his convictions is that the trial court erred in overruling his *Batson* objection. The use of a peremptory challenge to strike a potential juror solely on the basis of race violates the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. *Jeter v. State*, 888 N.E.2d 1257, 1262–63 (Ind.2008), (citing *Batson*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69), *cert. denied.*

The *Batson* Court developed a three-step test to determine whether a peremptory challenge has been used improperly to disqualify a potential juror on the basis of race. First, the party contesting the peremptory challenge must make a prima facie showing of discrimination on the basis of race. Second, after the contesting party makes a prima facie showing of discrimination,

the burden shifts to the party exercising its peremptory challenge to present a race-neutral explanation for using the challenge. Third, if a race-neutral explanation is proffered, the trial court must then decide whether the challenger has carried its burden of proving purposeful discrimination.

*Id.* at 1263 (citations omitted).

 "Upon appellate review, a trial court's decision concerning whether a peremptory challenge is discriminatory is given great deference, and will be set aside only if found to be clearly erroneous." *Forrest v. State*, 757 N.E.2d 1003, 1004 (Ind.2001). The Supreme Court has made it clear in recent years, though, that this deference is not absolute. Rather, courts need not accept any facially neutral reason for striking a juror and should consider " 'all relevant circumstances' " in assessing *Batson*-challenged peremptory strikes. *See Miller–El v. Dretke*, 545 U.S. 231, 240, 125 S.Ct. 2317, 2325, 162 L.Ed.2d 196 (2005) (quoting *Batson*, 476 U.S. at 96–97, 106 S.Ct. at 1723).

 The parties here appear to be in agreement that: (1) Killebrew made a prima facie showing of discrimination in the State's exercise of peremptory challenges and (2) the State provided facially neutral reasons for those strikes. The issue here thus is whether Killebrew has established that those facially neutral reasons were merely pretextual and a mask for purposeful discrimination. Because the United States Constitution " 'forbids striking even a single prospective juror for a discriminatory purpose,' " we will focus our attention solely upon the striking of prospective ju-

1. During questioning, however, this juror indicated that he could be fair and impartial after all.

402

ror L.S.[2] *See Snyder v. Louisiana,* 552 U.S. 472, 478, 128 S.Ct. 1203, 1208, 170 L.Ed.2d 175 (quoting *United States v. Vasquez–Lopez,* 22 F.3d 900, 902 (9th Cir. 1994), *cert. denied*).

The deputy prosecutor claimed to have used a peremptory strike on potential juror L.S. because he was too "emphatic" in agreeing with defense counsel's description of the State's burden of proof, and because he was afraid L.S. would place too high of an evidentiary burden upon the State. Tr. p. 449. It is true that L.S. said the State had to prove its case "beyond a shadow of a doubt...." *Id.* at 388. However, one white juror who was selected, B.C., said that guilt would have to be proved so that "there is no other possible doubt." *Id.* at 382. Yet another white juror, B.B., was seated after indicating he "would have to be one hundred percent sure that they were guilty." *Id.* at 383A. These statements are virtually indistinguishable from L.S.'s, yet only L.S. was stricken from the jury venire.

We conclude this case is on all fours with *Snyder.* There, the Supreme Court found a *Batson* violation in the prosecution's striking of an African–American juror whom the prosecutor claimed had appeared "nervous," and who had expressed some concern about the disruption that jury service would have on a student teaching position he held.[3] The Supreme

Court placed no weight upon the prosecutor's claim that the prospective juror appeared "nervous," because the trial court made no express finding regarding the prospective juror's demeanor that would indicate whether it agreed with the prosecutor's assertion; rather, the trial court approved the peremptory strike without explanation. *Snyder,* 552 U.S. at 479, 128 S.Ct. at 1209.

Similarly, the trial court here made no express finding whether it believed L.S. was "emphatic" in agreeing with defense counsel's description of the burden of proof. It simply approved the peremptory strike without explanation. As in *Snyder* and a claim of "nervousness," we will not place any weight on the prosecutor's claim here that L.S. was too "emphatic" in agreeing with defense counsel.[4]

The Supreme Court in *Snyder* also rejected the prosecution's second reason for striking the prospective juror, namely that he appeared concerned about missing student teaching time. The Court noted that other prospective jurors, who were white and *not* struck, expressed similar or even more pressing concerns about the toll jury service would have on their personal and/or professional lives. *Id.* at 484–85, 128 S.Ct. at 1211–12. *See also Miller–El,* 545 U.S. at 241, 125 S.Ct. at 2325 ("If a prosecutor's proffered reason for striking

---

**2.** We find the striking of prospective juror D.R. to be troublesome as well, but we need not address those concerns in detail. Additionally, reasonable minds could differ on the desirability of having nurses serve as jurors. However, without evidence that the deputy prosecutor here was being untruthful with respect to having a policy of routinely striking nurses like A.S. in all cases, regardless of race, we cannot second guess that claim.

**3.** *Snyder* was a death penalty case, but the Supreme Court's opinion gives no hint that it was applying a stricter *Batson* standard, or

was being less deferential to the trial court, because of that fact.

**4.** Justices Thomas and Scalia dissented in *Snyder,* taking issue with the majority's placing no weight upon the "nervousness" claim. *See Snyder,* 552 U.S. at 487–88, 128 S.Ct. at 1213–14. Be that as it may, Justice Alito's majority opinion, fully signed onto by the other six justices, is what constitutes the "law of the land." The analysis of the "nervousness" claim also clearly was not dicta, as the rejection of that claim was essential to the outcome of the case.

a black panelist applies just as well to an otherwise-similar nonblack who is permitted to serve, that is evidence tending to prove purposeful discrimination to be considered at *Batson's* third step").

Here, there is no meaningful distinction between how L.S. described his concept of the State's burden of proof and how B.B. and B.C. described it. If anything, they, and especially B.B., would appear to place an even greater burden of proof upon the State than L.S. Saying that one must be "one hundred percent" certain of guilt before convicting clearly is inconsistent with the concept of proof beyond a reasonable doubt. Tr. p. 383A. Nonetheless, both B.B. and B.C. were seated on the jury and L.S. was not.

*Batson* violations, hopefully, are and should be rare. It should not be impossible, however, for a defendant to prove a *Batson* violation. Neither trial courts nor appellate courts should simply blithely accept a facially neutral reason for striking African–Americans from a jury panel, especially when *all* African–Americans have been struck. The possibility of purposeful discrimination in the use of peremptory challenges is very much alive and real, as demonstrated in an infamous video from Philadelphia, recorded after *Batson* was decided, in which a prosecutor was captured advising other prosecutors on the undesirability of having African–Americans on juries. *See Wilson v. Beard*, 426 F.3d 653, 657 (3rd Cir.2005). Although there is no indication that Marion County prosecutors systematically exclude minorities from juries, courts must be vigilant in ensuring that the jury selection process in criminal cases is free from any hint of bias. Here, we conclude Killebrew has established that the peremptory strike of L.S. was the result of purposeful discrimination and a *Batson* violation, where there was no trial court finding regarding L.S.'s de-

meanor and the stated reason for striking him applied as much to B.B. and B.C. as it did to L.S.

## Conclusion

The trial court clearly erred in concluding that the State's strike of L.S. from the jury venire was not discriminatory. We reverse and remand for a new trial.

Reversed and remanded.

BROWN, J., concurs.

MATHIAS, J., dissents with opinion.

MATHIAS, J., dissenting.

I respectfully dissent from the majority's conclusion that the trial court committed clear error in overruling Killebrew's *Batson* objection. I believe the majority reads the decision in *Snyder v. Louisiana* 552 U.S. 472, 128 S.Ct. 1203, 170 L.Ed.2d 175 (2008), too broadly.

In *Snyder*, the Court did not base its conclusion exclusively on the fact that the prosecutor had failed to strike white jurors who had given responses similar to that of the black student juror. The Court's holding was also based on the fact that the prosecutor's proffered race-neutral explanation was implausible and, indeed, illogical. Considering the implausibility of the prosecutor's proffered explanation in conjunction with the prosecutor's inconsistency, the Court held that the prosecutor's proffered race-neutral explanation for striking the black juror was pretextual and that this pretext gave rise to an inference of discriminatory intent. *Id.* at 484–85, 128 S.Ct. 1203. And because it could not uphold the trial court's ruling on the grounds of the juror's nervousness when the trial court had not specifically ruled on that explanation, the Court held that the defendant's *Batson* objection should have been sustained. *Id.* at 486, 128 S.Ct. 1203.

The present case is readily distinguishable from *Snyder*. First, the reasons for striking the black jurors proffered by the deputy prosecutor were not implausible considered by themselves. When asked to give a race-neutral reason for striking juror D.R.,[5] the deputy prosecutor explained that D.R. had a great-nephew who had been convicted of drug dealing and that D.R. had stated that he thought that the police had acted unfairly in that case. The deputy prosecutor therefore thought that D.R. would not give the State a "fair shake." Tr. p. 437. This is clearly a valid concern for the prosecution and, by itself, a valid race-neutral reason for using a peremptory strike. *See Nicks v. State*, 598 N.E.2d 520, 523 (Ind.1992) (affirming trial court's overruling of defendant's *Batson* objection to prosecutor's use of peremptory strike to remove black juror where prosecutor gave several race-neutral explanations, including that juror's nephew had recently been convicted of murder in that court); *Buckner v. State*, 857 N.E.2d 1011, 1015 (Ind.Ct.App.2006) (concluding that prosecutor provided race-neutral explanation for use of a peremptory strike to remove black juror where that juror had a close family friend who had been charged with murder).

I acknowledge that the deputy prosecutor did not use a peremptory strike on a white member of the jury panel, P.H., who indicated on his jury questionnaire that his cousin had been found guilty of a crime that P.H. did not think his cousin had committed.[6] But P.H. explained that his cousin's crime was "between two brothers and the parents[,]" tr. p. 429, whereas there is no indication that D.R.'s nephew's conviction involved an intra-family dispute.

I do not deny that this is a close case. But while the deputy prosecutor's inconsistency may be evidence tending to prove purposeful discrimination, *see Miller–El v. Dretke*, 545 U.S. 231, 241, 125 S.Ct. 2317, 162 L.Ed.2d 196 (2005), I do not read *Snyder* or *Miller–El* to mean that such inconsistency is, by itself, conclusive proof of discrimination. The *Snyder* Court's holding was also based on the implausibility of the prosecutor's proffered race-neutral explanation. *See Snyder*, 552 U.S. at 483, 128 S.Ct. 1203; *see also Miller–El*, 545 U.S. at 266, 125 S.Ct. 2317 (relying upon substantial evidence of racial discrimination, in addition to the prosecutor's failure to strike white jurors who had given responses similar to those of stricken black jurors, in holding that prosecutor had engaged in racial discrimination in use of peremptory strikes). Because there were differences between D.R. and P.H.'s responses regarding their relative's prior history with the criminal justice system, I am unwilling to say that the trial court, who was in the best position to judge the credibility of the deputy prosecutor and D.R.'s demeanor at the time, clearly erred in believing the prosecutor's proffered race-neutral reasons for striking D.R.

With regard to L.S., the record confirms that L.S. did appear to agree with Killebrew's counsel with regard to reasonable doubt, with L.S. eventually saying that he

---

**5.** The majority concludes that the trial court erred in overruling Killebrew's *Batson* objection with regard to juror L.S. and therefore does not fully address his claim as to the trial court's ruling regarding D.R. Because I do not believe the trial court's ruling was clearly erroneous with regard to either juror, I address the trial court's ruling with regard to both.

**6.** P.H. also indicated on the questionnaire that he did not think that he could be a fair and impartial juror. However, when asked by the trial court if he could be a fair and impartial juror, P.H. changed his mind and indicated that he could be fair and impartial.

would not vote to convict if he had "a doubt in [his] mind" and that the State had to prove guilt "beyond a shadow of a doubt." Tr. pp. 387–88. I believe the deputy prosecutor could properly base a peremptory challenge on this exchange between Killebrew's counsel and L.S., which indicated that L.S. might hold the State to an impossibly high standard of proof. At the very least, this is a facially race-neutral reason for striking L.S. And unlike the proffered reason in *Snyder*, this reason is not illogical or implausible.

Again, I acknowledge that the deputy prosecutor did not strike two white members of the jury panel who gave responses similar to those of L.S. One of these white jurors, B.C., stated that he would define reasonable doubt as "if all [o]f the evidence is laid out there, there is no other possible doubt." Tr. p. 383. This response, however, is not as favorable to the defendant as L.S., whose responses indicated that he might hold the State to the impossibly-high standard of "beyond a shadow of a doubt." Tr. p. 388.

The other white juror in question, B.B., stated that he thought reasonable doubt was "certain guilt." Tr. p. 383A. In response to the question "What if you are pretty sure," B.B. stated, "I would have to be one hundred percent sure that they were guilty." *Id.* This is admittedly similar to the response given by L.S., and I do not deny that this is evidence tending to prove purposeful discrimination. *See Miller–El*, 545 U.S. at 241, 125 S.Ct. 2317. But I am unwilling to say that this inconsistent use of peremptory strikes is, by itself, conclusive proof of discriminatory intent upon the part of the deputy prosecutor.

In reviewing the L.S. strike it is once again important to emphasize the trial court's unique position to assess L.S.'s demeanor during voir dire. In answering Killebrew's Batson challenge, the prosecutor referred to the "emphatic" manner in which L.S. apparently agreed with defense counsel. The trial court, not our court, was in the best position to determine whether L.S. was "emphatic," and whether, because of L.S.'s demeanor in the courtroom, the prosecutor's proffered race-neutral explanation for striking L.S. was credible. *See Snyder*, 552 U.S. at 477, 128 S.Ct. 1203 (noting importance of trial court's first-hand observation of juror's demeanor). Unlike the majority, I do not read *Snyder* to mean that, simply because the trial court did not specifically make a finding regarding the juror's demeanor, that we are at liberty to second-guess the trial court's ultimate conclusion regarding the credibility of the prosecutor's proffered race-neutral reasons for striking a minority juror.

Even though there was some evidence tending to prove racial discrimination, I would not second-guess the credibility and demeanor judgments of the trial court in making the ultimate factual determination of whether the prosecutor's proffered race-neutral explanations were believable or simply pretextual. In both *Snyder* and *Miller–El* there was important evidence of the prosecutor's racial discrimination that is simply not present here. Although I admit that this is a very close call, under the standard of review applicable to the issues before us, I cannot say that the trial court's decision to overrule Killebrew's *Batson* objection constitutes clear error. I would therefore affirm Killebrew's convictions.