

FILED

Dec 15 2015, 5:31 am

CLERK
of the supreme court,
court of appeals and
tax court

| ATTORNEY FOR APPELLANT | ATTORNEYS FOR APPELLEE |
|---|---|
| David W. Stone IV<br>Anderson, Indiana | Gregory F. Zoeller<br>Attorney General of Indiana |
| | Brian Reitz<br>Deputy Attorney General<br>Indianapolis, Indiana |

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Billy Deon Blackmon,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff* | December 15, 2015<br><br>Court of Appeals Case No.<br>48A02-1505-CR-270<br><br>Appeal from the Madison Circuit Court<br><br>The Honorable Angela Warner Sims, Judge<br><br>Trial Court Cause No.<br>48C01-1310-FD-2037 |

**Crone, Judge.**

## Case Summary

[1] Billy Deon Blackmon appeals his conviction for class D felony resisting law enforcement following a jury trial. He argues that the trial court clearly erred in rejecting his claim that the prosecutor used a peremptory challenge to strike a

potential juror based on the juror's race in violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. The prosecutor gave two reasons for his peremptory strike, one of which was demeanor-based. The trial court allowed the peremptory strike without explicitly stating which of the prosecutor's reasons it found to be credible and not racially motivated. On appeal, Blackmon argues that because one of the reasons was demeanor-based and the trial court failed to find that it was credible, we have no basis from which to defer to the trial court on this reason. He also argues that the second reason was a pretext for racial discrimination. Therefore, he argues that his conviction must be reversed and his case remanded for a new trial.

[2] Given the circumstances present here, we reject Blackmon's contention that the trial court was required to explicitly credit the prosecutor's demeanor-based reason. We conclude that the prosecutor's second reason is suspicious and raises an inference of discriminatory motive. However, we conclude that reversal of Blackmon's conviction is not required because it is clear that the prosecutor would have struck the juror based on the demeanor-based reason alone.

[3] Blackmon also asserts that the evidence is insufficient to support his conviction. We conclude that the evidence is sufficient, and therefore we affirm.

## Facts and Procedural History

[4] In September 2013, Anderson Police Officer Michael Lee was assigned to serve a writ of body attachment on Blackmon. Around 12:48 a.m., Officer Lee, accompanied by deputy prosecutor Dan Kopp, drove to a parking lot near Blackmon's suspected location. Anderson Police Officers Chris Barnett and Mike Williams arrived to assist Officer Lee. The house where Blackmon was suspected to be was located on a dead-end street. The officers believed that a police car would not be able to approach the house without being seen, so Kopp, who was in plain clothes, walked to the house to see if Blackmon's white Chevrolet Trailblazer was parked there. Kopp told the officers that the lights were on in the house but he did not see the Trailblazer.

[5] The officers decided to proceed to the house on foot. Officers Barnett and Williams walked to the front of the house while Officer Lee and Kopp walked to the back of the residence. Officers Barnett and Williams knocked on the front door. A female answered and told them that Blackmon was not there, which they related to Officer Lee who was still behind the house.

[6] Officer Lee heard a vehicle in the alley behind the house. The vehicle, a white Trailblazer, was moving toward the house at "a little higher speed than normal for somebody driving down an alley." Tr. at 141. The Trailblazer turned quickly into an area behind the house that looked like it was frequently used as a parking spot. Officer Lee was standing "right in front of" that parking spot. *Id*. at 140. The Trailblazer stopped with its headlights "right on" Officer Lee, who was in full police uniform. *Id*. at 141. Officer Lee stepped aside to get

"out of direct line with the vehicle and drew [his] handgun." *Id*. He backed up four or five steps and shined the light attached to his pistol into the driver's door window, which was rolled down. Officer Lee, who was about ten feet from the car, made "direct eye contact" with Blackmon. *Id*. at 142. Officer Lee recognized Blackmon from photographs he had looked at earlier that evening.

[7] Blackmon put the car in reverse and started to back out of the parking spot. Officer Lee shouted, "Stop! Police!" *Id*. He took a few steps toward the car as it was backing up, called Blackmon by name, and again told him to stop. *Id*. Blackmon drove down the alley and turned onto the street.

[8] Officer Lee saw the direction Blackmon was driving, radioed other officers in the area, and gave them a description of the vehicle. A few minutes later, police spotted the Trailblazer eight or nine blocks away parked in the yard of an abandoned house. The keys were still in the ignition. No one was in the abandoned house. Officer Lee discovered that the Trailblazer was registered to Blackmon's mother.

[9] The State charged Blackmon with class D felony resisting law enforcement. A jury convicted him as charged. This appeal ensued. Additional facts will be provided.

# Discussion and Decision

## Section 1 – The trial court did not err in denying Blackmon's *Batson* claim.

[10] In *Batson v. Kentucky*, 476 U.S. 79, 86 (1986), the United States Supreme Court held, "Purposeful racial discrimination in selection of the venire violates a defendant's right to equal protection because it denies him the protection that a trial by jury is intended to secure." A defendant's claim that the State has used a peremptory challenge to strike a potential juror solely on the basis of race is commonly known as a *Batson* claim. Equal protection rights under *Batson* have been substantially expanded. *See Jeter v. State*, 888 N.E.2d 1257, 1262 (Ind. 2008) (observing that *Batson* has been extended to prohibit criminal defendants from using peremptory challenges to strike a juror solely on the basis of race) (citing *Georgia v. McCollum*, 505 U.S. 42, 59 (1992)), *cert. denied*; *Addison v. State*, 962 N.E.2d 1202, 1208 (Ind. 2012) ("The exclusion of even a sole prospective juror based on race, ethnicity, or gender violates the Fourteenth Amendment's Equal Protection Clause.") (citing *Snyder v. Louisiana*, 552 U.S. 472, 478 (2008)); *Ashabraner v. Bowers*, 753 N.E.2d 662, 666 (Ind. 2001) (observing that *Batson* applies to civil cases) (citing *Edmonson v. Leesville Concrete Co.*, 500 U.S. 614, 616 (1991)). Under *Batson*, a race-based peremptory challenge also violates the equal protection rights of the juror, and therefore *Batson* prohibits parties from using racially-based peremptory challenges regardless of the race of the opposing party. *Ashabraner*, 753 N.E.2d at 666-67.

[11]     Here, during jury selection, the State used its peremptory challenges in the first round to strike three potential jurors, including one of only two African-Americans in the fourteen-person venire.[1] Blackmon raised a *Batson* claim, and the parties engaged in the following discussion.

> Defense counsel:  [I]t is a Batson record that I would like to make.  [W]e had in the jury box for selection, two (2) African[-] Americans.  We had [Juror 3] and [Juror 14].  [Juror 14] has been selected as a juror.  [Juror 3] was excused by exercise of a [peremptory] challenge by the State and, again, just requesting that the record be made on that and inquiring as to the rationale beyond her dismissal.

> Court:  [Defense counsel] indicated that in the original fourteen (14) jurors that we had up in the jury box for possible selection on the first round, we did have two (2) African[-]Americans and that was [Juror 3], and then [Juror 14].  As [defense counsel] indicated, [Juror 14] has now been seated as a juror in this case and [Juror 3] was struck by the exercise of a [peremptory] challenge by the State.  Does the State wish to offer an explanation as to the reason for the [peremptory] on [Juror 3]?

> Prosecutor:  The State did not exercise a [peremptory] due to race or gender.  The State exercised a [peremptory] because I did not see [Juror 3] actively engaged in the dialogue both when [defense counsel] and myself were asking questions to the entire group.  Some people were nodding or shaking their heads. People were raising their hands.  The only time she answered questions when was [sic] she was asked them directly.  She just wasn't very engaged.  I didn't really want to put her on the jury

---

[1] The record is silent as to the race of the other two panelists struck by the State.

to begin with. Then after getting back to the table and confirming Officer Lee, he indicated that he believed [Juror 3] might know Linda Mitchell as well, who's a witness. And, and that was I guess the final straw and decided to exercise a [peremptory].

Defense counsel: And, and just for purposes of the record, I would note that [Juror 9 and Juror 12] I believe it was likewise, were not very responsive or engaged, it seemed, equally with [Juror 3]. And also would note that [Juror 3] did not identify or react to Linda Mitchell's name at any time. [W]hen her name was mentioned in sort of the mini opening that we gave as introduction.

Prosecutor: Well, I'm not sure I'd agree with the characterization of the other jurors ….

Court: …. And make sure, maybe, we make clear, then, for the record itself in the context of this challenge that Mr. Blackmon is an African[-]American gentlemen as well that is in the courtroom.[2] …. The Court is not persuaded that the Defendant has established that there has been a purposeful discrimination in this – in exercising [the prosecutor's] [peremptory] challenge.

Tr. at 108-10 (verbal pauses removed for clarity).

[12]    Blackmon argues that the trial court erred in denying his *Batson* challenge and that reversal of his conviction and remand for a new trial is the proper remedy. "Upon appellate review, a trial court's decision concerning whether a

---

[2] We reiterate that the party making a *Batson* claim need not be the same race as the potential juror(s). *See Ashabraner*, 753 N.E.2d at 666-67.

peremptory challenge is discriminatory is given great deference, and will be set aside only if found to be clearly erroneous." *Forrest v. State*, 757 N.E.2d 1003, 1004 (Ind. 2001). When a party raises a race-based *Batson* claim, three steps are involved. At the first step, the defendant must make a prima facie showing that there are "circumstances raising an inference that discrimination occurred." *Addison*, 962 N.E.2d at 1208. The State argues that Blackmon failed to make a prima facie case of purposeful discrimination. During jury selection, the prosecutor used his peremptory challenges to strike one of two African-American panelists. Standing alone the removal of some African-American jurors by peremptory challenge does not raise an inference of discrimination. *McCormick v. State*, 803 N.E.2d 1108, 1111 (Ind. 2004) (citing *Kent v. State*, 675 N.E.2d 332, 340 (Ind. 1996)). On the other hand, our supreme court has held that striking the only African-American juror that could have served on the petit jury is prima facie evidence of discriminatory intent. *Addison*, 962 N.E.2d at 1209 (citing *McCormick*, 803 N.E.2d at 1111); *see also Schumm v. State*, 866 N.E.2d 781, 789 (Ind. Ct. App. 2007) (concluding that where State struck the sole African-American juror, defendant made a prima facie showing of racial discrimination).

[13] Here, only one African-American was left to serve on the fourteen-person jury.[3] Blackmon did not argue to the trial court that this fact established a prima facie

---

[3] However, that African-American juror was ultimately excused when the State inadvertently let him see an unredacted copy of the defendant's driving record. Tr. at 156, 172, 174.

case, and the record does not reveal whether there were additional circumstances present during Blackmon's trial that would raise an inference of discrimination. However, we need not decide whether Blackmon established a prima facie case. "[W]here, as here, a prosecutor has offered a race-neutral explanation for the peremptory challenge and the trial court has ruled on the ultimate question of intentional discrimination, the preliminary issue of whether the defendant had made a prima facie showing of purposeful discrimination becomes moot." *Cartwright v. State*, 962 N.E.2d 1217, 1222 (Ind. 2012); *accord Addison*, 962 N.E.2d at 1209 n.2.[4]

[14] At the second step, if the defendant makes a prima facie showing, the burden shifts to the prosecution to "'offer a race-neutral basis for striking the juror in question.'" *Addison*, 962 N.E.2d at 1209 (quoting *Snyder*, 552 U.S. at 477). "[T]he race-neutral explanation must be more than a mere denial of improper motive, but it need not be 'persuasive, or even plausible.'" *McCormick*, 803

---

[4] The State argues that "We may reexamine whether Blackmon failed to make a prima facie showing of discrimination notwithstanding that the prosecutor offered an explanation for the peremptory strike and the trial court ruled that Blackmon had failed to establish purposeful discrimination." Appellee's Br. at 10 n.3. The State maintains that step one becomes moot only when the prosecutor defends his use of peremptory strikes without any prompting or inquiry from the trial court. In support, the State cites *Hernandez v. New York*, 500 U.S. 352, 359 (1991), in which the prosecutor offered the reasons for his peremptory challenges without being prompted to do so. The State's argument ignores *Cartwright*, 962 N.E.2d 1217, in which the State offered its reasons for its peremptory strike simultaneously with its request to strike. Our supreme court declined to reexamine whether the defendant made a prima facie case of purposeful discrimination because the State had supplied its reasons and the trial court ruled on the ultimate issue of purposeful discrimination. *Id*. at 1222. We further note that here, the prosecutor did not argue to the trial court that Blackmon had failed to make a prima facie case of purposeful discrimination. *Cf. Hardister v. State*, 849 N.E.2d 563, 576 (Ind. 2006) (defendant argued on appeal that trial court clearly erred by ruling that he failed to make a prima facie showing of purposeful discrimination and supreme court found that defendant failed to make prima facie case and concluded that trial court had not clearly erred in summarily denying *Batson* claim without asking prosecutor to explain reasons for peremptory strikes).

N.E.2d at 1110 (quoting *Purkett v. Elem*, 514 U.S. 765, 768 (1995)). "'[T]he issue is the facial validity of the prosecutor's explanation.'" *Id*. (quoting *Purkett*, 514 U.S. at 768). "A neutral explanation means 'an explanation based on something other than the race of the juror.'" *Id*. at 1111 (quoting *Hernandez v. New York*, 500 U.S. 352, 360 (1991)). "'Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral.'" *Addison*, 962 N.E.2d at 1209 (quoting *Purkett*, 514 U.S. at 768). Here, the prosecutor gave two reasons for striking Juror 3: her lack of engagement with the jury selection process and the possibility that she might know defense witness Linda Williams. These reasons are based on something other than the race of the juror, and therefore, on their face, they are racially neutral. *See McCormick*, 803 N.E.2d at 1110.

[15] At the third step, the trial court must determine "'whether the defendant has shown purposeful discrimination.'" *Addison*, 962 N.E.2d at 1209 (quoting *Snyder*, 552 U.S. at 477). "It is then that 'implausible or fantastic justifications may (and probably will) be found to be pretexts for purposeful discrimination.'" *Id*. at 1210 (quoting *Purkett*, 514 U.S. at 768). The third step requires the trial court to assess the credibility of the State's race-neutral explanation "'in light of all evidence with a bearing on it.'" *Id*. (quoting *Miller-El v. Dretke*, 545 U.S. 231, 251-52 (2005)). At this stage, the defendant may offer additional evidence to demonstrate that the prosecutor's explanation was pretextual. *Id*. Although this third step involves evaluating "the persuasiveness of the justification" proffered by the prosecutor, "the ultimate burden of persuasion regarding racial

motivation rests with, and never shifts from, the opponent of the strike." *Highler v. State*, 854 N.E.2d 823, 828 (Ind. 2006) (quoting *Purkett*, 514 U.S. at 768). "[I]n considering a *Batson* objection, or in reviewing a ruling claimed to be *Batson* error, all of the circumstances that bear upon the issue of racial animosity must be consulted." *Snyder*, 552 U.S. at 478.

[16] Here, defense counsel argued that white panelists had been equally disengaged, with which the prosecutor disagreed. Defense counsel also argued that Juror 3 did not indicate that she knew Linda Williams when the venire was asked early in voir dire (more on this below). The trial court then ruled that Blackmon had failed to show purposeful discrimination.

[17] Blackmon advances two alleged errors in the trial court's ruling. First, he argues that the trial court erred by failing to state whether it found both of the prosecutor's reasons credible or only one of his reasons credible. Generally, a trial court is not required to make explicit fact-findings following a *Batson* challenge. *Addison*, 962 N.E.2d at 1210. However, Blackmon asserts that because one of the prosecutor's reasons was based on Juror 3's demeanor, the trial court's failure to identify which reason it was relying on resulted in an inadequate ruling and leaves us without a basis to conclude that the trial court found the demeanor-based reason credible. Blackmon does not otherwise argue that the demeanor-based reason is constitutionally infirm. Second, Blackmon contends that the trial court erred in denying his *Batson* challenge because the prosecutor's other reason was a pretext for discrimination. We address each claim in turn.

[18] To support his argument that the trial court erred in failing to explicitly credit the prosecutor's demeanor-based reason, Blackmon relies on *Snyder*, 552 U.S. 472. There, the prosecutor gave two reasons for striking a black juror. First, the prosecutor explained that the juror seemed nervous throughout the questioning. *Id*. at 478. Second, the prosecutor stated that the juror was a student teacher who was going to miss class and might be inclined to find that the defendant was guilty of a lesser verdict to avoid the penalty phase and shorten his jury duty. *Id*. The trial court denied the defendant's *Batson* claim without indicating which of the reasons it found credible, merely ruling that it would "allow the challenge." *Id*.

[19] In addressing whether the trial court clearly erred in denying the defendant's *Batson* claim, the Supreme Court considered both of the prosecutor's proffered reasons. As for the juror's alleged nervousness, the Court noted that "nervousness cannot be shown from a cold transcript." *Id*. at 479 (citation omitted). The Court explained that "deference is especially appropriate where a trial judge has made a finding that an attorney credibly relied on demeanor in exercising a strike. Here, however, the record did not show that the trial judge actually made a determination concerning the juror's demeanor." *Id*. Significantly, the juror "was not challenged until the day after he was questioned, and by that time dozens of other jurors had been questioned." *Id*. Under these circumstances, the Court observed that the trial judge might not even have remembered the juror's demeanor. Because the prosecutor had offered two reasons for the strike, the Court reasoned that the trial court may

have had no opinion on the juror's demeanor or may have based its ruling completely on the prosecutor's second reason. *Id*. The Court concluded, "For these reasons, we cannot presume that the trial judge credited the prosecutor's assertion that [the juror] was nervous." *Id*.

[20] The Court then addressed the second reason given for the strike, namely, that the juror had conflicting obligations. The Court concluded that it was "implausible" in light of the brevity of the trial, which the prosecutor anticipated on the record during voir dire. The Court stated that this implausibility was reinforced by the prosecutor's acceptance of white jurors who also said that they had obligations that conflicted with jury duty. *Id*. at 483. The Court concluded that the prosecutor's second reason was pretextual and gave rise to an inference of discriminatory intent. *Id*. at 485. In determining the proper remedy, the Court noted that remanding to determine whether "the prosecution would have pre-emptively challenged [the juror] based on his nervousness alone" would be impossible because more than a decade had passed since Snyder's trial. *Id*. at 485-86. Therefore, the Court reversed Snyder's conviction.

[21] We do not read *Snyder* as requiring a trial court to make explicit findings every time the prosecution justifies a peremptory strike based on a juror's demeanor. In *Snyder*, the juror "was not challenged until the day after he was questioned, and by that time dozens of other jurors had been questioned," and therefore the Supreme Court thought it reasonably possible that the trial judge might not even have remembered the juror's demeanor. 552 U.S. at 479. Here, in

contrast, there is no reason to think that the trial court did not remember the panelists' demeanor. Voir dire occurred within one morning, and there were only fourteen panelists. Blackmon argued in support of his *Batson* claim, specifically identifying two white panelists who he said were as equally unengaged as Juror 3. The prosecutor disagreed with defense counsel's characterization of other white panelists.

[22] We assume that the trial court listened to and considered the parties' arguments. The trial court, not the appellate court, is in the best position to consider the juror's demeanor, the nature and strength of the parties' arguments, and the attorney's demeanor and credibility. As the *Snyder* court observed,

> [T]he trial court must evaluate not only whether the prosecutor's demeanor belies a discriminatory intent, but also whether the juror's demeanor can credibly be said to have exhibited the basis for the strike attributed to the juror by the prosecutor. We have recognized that these determinations of credibility and demeanor lie "peculiarly within a trial judge's province."

*Id.* at 477 (quoting *Hernandez*, 500 U.S. at 365). In this case, there are no circumstances that call into question the usual deference we give to the trial court's superior ability to evaluate the panelists' demeanor and the attorneys' arguments and demeanor.

[23] Blackmon also relies on *Killebrew v. State*, 925 N.E.2d 399 (Ind. Ct. App. 2010), *trans. denied*, in which another panel of this Court found that *Snyder* squarely applied. In *Killebrew*, the prosecutor used peremptory challenges to strike all

five African-American members of the venire. The prosecutor's reasons for striking "potential juror L.S. [was] because he was too 'emphatic' in agreeing with defense counsel's description of the State's burden of proof, and because [the prosecutor] was afraid that L.S. would place too high of an evidentiary burden upon the State." *Id.* at 402. As for L.S. being too "emphatic," the *Killebrew* court found that it was the same as the claim of "nervousness" in *Snyder*. The *Killebrew* court observed that "the trial court here made no express finding whether it believed L.S. was 'emphatic' in agreeing with defense counsel's description of the burden of proof." *Id.* The *Killebrew* court concluded, "[W]e will not place any weight on the prosecutor's claim here that L.S. was too 'emphatic' in agreeing with defense counsel." *Id.*

[24] The *Killebrew* court also found that the State's second reason was governed by *Snyder*. The court observed that "there was no meaningful distinction between how L.S. described his concept of the State's burden of proof" and how the white panelists who were not struck described it. *Id.* at 403. The court concluded that Killebrew had established that the prosecutor's peremptory strike of L.S. was the result of purposeful discrimination and reversed and remanded for a new trial. *Id.*

[25] We conclude that *Killebrew* is distinguishable. In deciding that it would not place any weight on the prosecutor's demeanor-based justification, the *Killebrew* majority did not discuss the circumstances surrounding voir dire or the arguments advanced by the attorneys at step three of the *Batson* procedure. Significantly, the prosecutor struck all five African-American panelists, and the

*Killebrew* court concluded that the record showed that the prosecutor's second reason applied to other white panelists who were not struck.  Regarding the issue of whether to credit the prosecutor's demeanor-based reason, we agree with Judge Mathias's interpretation of *Snyder* in his dissenting opinion.  He wrote,

> In reviewing the L.S. strike it is once again important to emphasize the trial court's unique position to assess L.S.'s demeanor during voir dire.  In answering Killebrew's Batson challenge, the prosecutor referred to the "emphatic" manner in which L.S. apparently agreed with defense counsel.  The trial court, not our court, was in the best position to determine whether L.S. was "emphatic," and whether, because of L.S.'s demeanor in the courtroom, the prosecutor's proffered race-neutral explanation for striking L.S. was credible.  *See Snyder*, 552 U.S. at 477, 128 S. Ct. 1203 (noting importance of trial court's first-hand observation of juror's demeanor).  Unlike the majority, I do not read *Snyder* to mean that, simply because the trial court did not specifically make a finding regarding the juror's demeanor, that we are at liberty to second-guess the trial court's ultimate conclusion regarding the credibility of the prosecutor's proffered race-neutral reasons for striking a minority juror.

*Killebrew*, 925 N.E.2d at 405 (Mathias, J., dissenting).[5]

---

[5] Blackmon also cites *United States v. Rutledge*, 648 F.3d 555 (7th Cir. 2011), which is likewise distinguishable. In *Rutledge*, the trial court denied the defendant's *Batson* challenge.  In so doing, it merely stated that the government's reasons for the strike were race-neutral.  The Seventh Circuit concluded that the trial court failed to satisfy its duty in step three of the *Batson* procedure to determine whether the government's reasons were credible.  *Id.* at 561.  The Seventh Circuit remanded for the trial court to evaluate the government's reasons for credibility, not merely facial racial neutrality.  Here, the trial court found that Blackmon failed to establish purposeful discrimination, thereby reaching the ultimate issue required by step three.

[26]     Here, as previously noted, there were no circumstances to suggest that the trial court did not remember the panelists. In addition, Juror 3's disengagement was plainly the main reason offered by the prosecutor for the peremptory strike. The attorneys presented argument on her demeanor and discussed the demeanor of other panelists, and the trial court ruled that Blackmon had failed to establish purposeful discrimination. Accordingly, we conclude that Blackmon has failed to show that the trial court's ruling was inadequate or erroneous because it failed to make an explicit finding that Juror 3's disengagement was a credible nondiscriminatory reason for the peremptory strike.

[27]     We now turn to the second reason the prosecutor advanced in support of his peremptory strike of Juror 3. The prosecutor said that Officer Lee told him that Juror 3 "might know" Linda Mitchell. Tr. at 109. For background purposes, we note that after the panelists were sworn in, the prosecutor introduced himself and informed the panel of the names of the State's witnesses. *Id.* at 44. Defense counsel followed suit, telling the panel that Blackmon's aunt, Linda Mitchell, was a potential defense witness. *Id.* at 44-45. The trial court asked the panelists whether any of them recognized the names of the potential witnesses. *Id.* Juror 3, who was under oath, did not indicate that she knew Mitchell. After additional questions from the trial court, the prosecutor had an opportunity to question the panel. The prosecutor did not ask Juror 3 whether she knew Mitchell. "'The State's failure to engage in any meaningful voir dire examination on a subject the State alleges it is concerned about is evidence

suggesting that the explanation is a sham and a pretext for discrimination.'" *Addison*, 962 N.E.2d at 1215 (quoting *Miller-El*, 545 U.S. at 246). The State asserts that the prosecutor did not question Juror 3 about Mitchell because Officer Lee did not tell the prosecutor that Juror 3 might know Mitchell until after the prosecutor got back to the table. Tr. at 109. That merely raises the question why Officer Lee did not inform the prosecutor while the trial court was questioning the panelists before the prosecutor began his voir dire.

[28] The State also argues that the prosecutor had no reason to doubt Officer Lee's statement that Juror 3 might know Mitchell and that Juror 3 might not have heard Mitchell's name because Juror 3 was disengaged. We cannot speculate on either of these suggestions based on a cold transcript. Given that Juror 3 was under oath and that the prosecutor's proffered reason was one that he learned from Officer Lee, who was not under oath, the prosecutor's proffered reason is suspicious and supports an inference of discriminatory intent.

[29] Taking stock of matters thus far, we have a demeanor-based reason for striking Juror 3 that supports the trial court's denial of Blackmon's *Batson* claim. If that were the only reason given, we would have no basis to find that the trial court clearly erred in denying his *Batson* claim. However, there was a second reason provided that, although facially race-neutral, appears to be a pretext. We must determine the proper remedy under these circumstances, which neither party nor the United States Supreme Court has addressed. The Indiana Supreme Court dealt with a somewhat similar situation in *McCormick*, 803 N.E.2d 1108. There, the prosecutor gave several reasons for striking the only African-

American on the panel: she was distraught; she looked uncomfortable; and her answers showed that she was uncomfortable with the process. The *McCormick* court concluded that each of these reasons was a permissible race-neutral explanation. *Id*. at 1111. However, the court concluded that one of the prosecutor's reasons–that the juror would find it difficult "passing judgment on a member of one's own in the community"–was not facially race-neutral. *Id*.

[30]     In determining the appropriate remedy, the court considered two alternative approaches: the dual motivation approach and the tainted approach. The dual motivation approach "proceeds under the theory that '[a] person may act for more than one reason' and that when a prosecutor offers both legitimate and illegitimate reasons for a strike, further analysis is required." *Id*. at 1112 (quoting *Howard v. Senkowski*, 986 F.2d 24, 26 (2d Cir. 1993)) (brackets in *McCormick*). The tainted approach maintains that "'[r]egardless of how many other nondiscriminatory factors are considered, any consideration of a discriminatory factor directly conflicts with the purpose of *Batson* and taints the entire jury selection process.'" *Id*. at 1113 (quoting *Arizona v. Lucas*, 18 P.3d 160, 163 (Ariz. Ct. App. 2001)) (brackets in *McCormick*). The *McCormick* court observed that the dual motivation analysis "is inconsistent with the facially valid standard announced by the Supreme Court in *Purkett*." *Id*. Therefore, the *McCormick* court applied the tainted approach and concluded that "the State failed to meet its burden under the second prong of *Batson* to come forward with a race-neutral explanation for its peremptory strike. McCormick is thus entitled to a new trial." *Id*.

In sum, the *McCormick* court applied the tainted approach because one of the reasons for the peremptory challenge was race-based on its face. The *McCormick* court specifically referred to *Purkett*, in which the Supreme Court held that the prosecutor's reasons must be facially neutral, but need not be "persuasive, or even plausible." 514 U.S. at 768. Here, the prosecutor's second reason was facially race-neutral, and therefore *McCormick* is not controlling. We decline to extend it to the circumstances present here, in which the prosecutor satisfied the second step of the *Batson* analysis and the trial court ruled that Blackmon failed to establish purposeful discrimination.

We observe that the Supreme Court has stated that dual motivation analysis would apply in the context of determining racial motivation for purposes of adjudicating other types of challenges based on the Equal Protection Clause. *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 270 n.21 (1977).[6] We think that the dual motivation analysis is appropriate to apply in this case. "[U]nder dual motivation analysis, if the trial court finds that the proponent of the strike has articulated both race-based and race-neutral reasons

---

[6] In *Snyder*, the Supreme Court did not need to decide whether to apply dual motivation analysis:

> In other circumstances, we have held that, once it is shown that a discriminatory intent was a substantial or motivating factor in an action taken by a state actor, the burden shifts to the party defending the action to show that this factor was not determinative. *See Hunter v. Underwood*, 471 U.S. 222, 228, 105 S. Ct. 1916, 85 L. Ed. 2d 222 (1985). We have not previously applied this rule in a *Batson* case, and we need not decide here whether that standard governs in this context. For present purposes, it is enough to recognize that a peremptory strike shown to have been motivated in substantial part by discriminatory intent could not be sustained based on any lesser showing by the prosecution.

552 U.S. at 486-87.

for a peremptory strike, then the proponent bears the burden of demonstrating that the strike would have been exercised even in the absence of any discriminatory motivation." *McCormick*, 803 N.E.2d at 1112. In this case, the record clearly establishes that the predominant reason that the prosecutor wished to strike Juror 3 was that she was not fully engaged with the jury selection process. The prosecutor stated that he "didn't really want to put her on the jury to begin with," and that when he learned that she might know a defense witness, it was merely the "final straw." Tr. at 109. Accordingly, we conclude that the prosecutor would have exercised the peremptory challenge in the absence of any discriminatory purpose. Therefore, we conclude that the trial court did not clearly err in denying Blackmon's *Batson* challenge.

## Section 2 – The evidence is sufficient to support Blackmon's conviction for resisting law enforcement.

[33] Blackmon also contends that his conviction is unsupported by sufficient evidence. Our standard of review is well settled:

> [When] reviewing the sufficiency of the evidence needed to support a criminal conviction[,] ... we neither reweigh evidence nor judge witness credibility. We consider only the evidence supporting the judgment and any reasonable inferences that can be drawn from such evidence. We will affirm a conviction if there is substantial evidence of probative value such that a reasonable trier of fact could have concluded the defendant was guilty beyond a reasonable doubt.

*Henley v. State*, 881 N.E.2d 639, 652 (Ind. 2008) (citations omitted).

[34] To convict Blackmon of class D felony resisting law enforcement, the State was required to prove that he used a vehicle to knowingly or intentionally flee from a law enforcement officer after the officer had, by visible or audible means, identified himself and ordered him to stop. Ind. Code § 35-44.1-3-1(a)(3), -(b)(1)(A); Appellant's App. at 8 (charging information). Blackmon argues that there is insufficient evidence to establish that he knew or had reason to know that he was dealing with a police officer. *See Mason v. State*, 944 N.E.2d 68, 71 (Ind. Ct. App. 2011) ("To be convicted for resisting law enforcement, though, the evidence must show that the defendant knew or had reason to know that the person resisted was a police officer."), *trans. denied*.

[35] Here, Officer Lee was in full police uniform. He testified that he was directly in front of the parking area when Blackmon's Trailblazer pulled in and that its lights were shining directly at him. Officer Lee and Blackmon made direct eye contact. The driver's door window was rolled down. Officer Lee was only about ten feet away when he yelled, "Stop! Police!" Tr. at 142. He also called Blackmon by name and again yelled for him to stop. This is sufficient evidence from which a reasonable trier of fact could find that Blackmon knew or had reason to know that the person yelling at him to stop was a police officer. Blackmon's argument is merely a request to reweigh the evidence, which we must decline. We conclude that the evidence is sufficient and affirm Blackmon's conviction.

Affirmed.

May, J., and Bradford, J., concur.