## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Mar 15 2018, 9:02 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Richard Walker
Anderson, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Katherine Cooper
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Darrin L. Burns, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff.* | March 15, 2018 <br><br> Court of Appeals Case No. <br> 48A02-1705-CR-975 <br><br> Appeal from the Madison Circuit Court <br><br> The Honorable David A. Happe, Judge <br><br> Trial Court Cause No. <br> 48C04-1512-F3-2101 |

**Brown, Judge.**

[1]    Darrin L. Burns appeals his conviction for aggravated battery as a level 3 felony. Burns raises one issue which we restate as whether the trial court properly denied his *Batson* challenge. We affirm.

## Facts and Procedural History

[2]    On November 3, 2015, Burns went to the VIP show club in Anderson, Indiana, with Tyrone Howard and Marquis Kelley. James Deane was also at the club that night with Joe Dill to play pool. Deane placed quarters down on Burns's pool table and watched women dance. At some point, Deane and Howard had an altercation, Burns punched Deane, and Deane fell backwards and hit the pool table on the way down. At 11:35 p.m., an ambulance was dispatched to the club because Deane was unconscious and not breathing. When Deane arrived at the hospital, Dr. David Soper ordered a CT scan that revealed blood in the left temporal area. Deane remained in the hospital for a little over thirty days. Dr. James Callahan, the neurosurgeon who treated Deane, diagnosed him with a subdural hematoma, or a blood clot underneath the skull and the brain's covering that pushes on the outside of the brain.

[3]    As a result of the events at the club, the State charged Burns with aggravated battery as a level 3 felony. During *voir dire*, the prosecutor questioned potential jurors and stated:

> sometimes there's somethings [sic] that, you know, that the police, they do everything that they can, they investigate a case, we investigate a case, you know, and it goes to trial, we prosecute it, and you're firmly convinced, you know, you say I'm firmly convinced, I know that it happened, but they say well, you know,

I had a question about this, and I call this like the "what if" question. Does anybody know a what-iffer? Every [sic] meet a what-iffer? They can what-if something to death, you know? But at the end of the day, you know, they have everything they need to make a decision, right? But they're still asking other questions and they might be fair questions but they may not be necessary questions, right?

Transcript Volume 2 at 125. The following exchange occurred between the prosecutor and Potential Juror 14:

[Prosecutor]: Okay. We had a lot of discussion about the proof beyond a reasonable doubt. Were you able to hear that okay? Describe that for me real quick.

[Potential Juror 14]: (Indiscernible)

[Prosecutor]: Okay. And at the end of the day - We talked that sometimes you might have some questions left over, right, there might be some questions?

[Potential Juror 14]: Yes.

[Prosecutor]: But what do you have to - How convinced, I guess, do you have to be? Did you hear what we were talking about?

[Potential Juror 14]: (Indiscernible)

[Prosecutor]: Can you explain that, flush that out a little bit more for me?

[Potential Juror 14]: (Indiscernible)

[Prosecutor]: So at the end of the day you need to be firmly convinced?

[Potential Juror 14]: Comfortable.

[Prosecutor]: Comfortable, yeah.  I mean we want you to walk out of here feeling like you made the right decision.

[Potential Juror 14]: Right.

[Prosecutor]: But if you have some questions at the end, and you've listened to all the evidence, but you're firmly convinced that it happened, that this really happened, would you still be able to make a decision?

[Potential Juror 14]: One way or the other.

[Prosecutor]: Yeah, one way or - But I mean if you're firmly convinced that it happened, right?  If you believe that it happened would you be able to find someone guilty?

[Potential Juror 14]: Yes.

[Prosecutor]: Okay.  And even if you have a few questions, you know, would you - Are you someone that's kind of a what-iffer?  Like you would what-if something?

[Potential Juror 14]: Yes.

[Prosecutor]: Okay.  Tell me a little about that.

[Potential Juror 14]: Well if you have doubts I think the main thing would be to ask a question.  (Indiscernible)

*Id*. at 245-247.  The prosecutor pointed out to Potential Juror 14 that he did not answer the question on the jury questionnaire about whether "religious scruples or anything" would keep the juror from being able to decide the defendant's guilt. *Id.* at 248.  Potential Juror 14 stated that he thought he could make the decision to find someone guilty if, "like [he] said," he "got enough evidence to ease [his] mind." *Id.* at 248.

[4] When the State exercised a peremptory strike, counsel for Burns made a *Batson* record, and stated that Potential Juror 14 was the only African-American on the jury panel, that Burns was an African-American, and that the State had no response from Potential Juror 14 that reflected that he could not be fair. The prosecutor responded by stating:

> When asked if he was a what-if person he said yes and when I asked him about, um, what that meant, um, what it boiled down to, um, him making a decision and he had, um, and I think the court can note, that he took longer, he didn't answer right away. There was a pause on whether he could ultimately make a decision on the case. So a combination of both those things, that he answered yes, that he was a what-if person and that he hesitated when asked if he can make a decision in the case.

Transcript Volume 3 at 3. Burns's counsel raised concerns that Potential Juror 14 had not given any indication of bias for Burns, to which the prosecutor stated that he "also asked him very clearly if he was able to hear the conversation that had been happening prior to this and he said yes," that "the conversation prior to this contained many questions of the jurors about what-ifs," and that Potential Juror 14 "knew what that meant." *Id.*

[5] The court denied the *Batson* challenge and stated:

> Of course the standard (indiscernible) the court uses at this point is not whether or not there's a cause challenge. If there's a reasonable independent reason that could justify the State's decision and if there is a facially neutral reason then the court is to accept that, not (indiscernible) find out whether it's — it's not to go further (indiscernible). If they can come up with a facially

valid reason that seems to be supported by the record, that is sufficient. And I do think that in this case the juror was certainly very hesitant in his responses and did characterize himself as, using the words of the State, a what-iffer. He did qualify that somewhat in discussion later about that but I think the State is entitled to look at that and say this is a person who seems to be someone less than decisive and less than committed to the principal [sic] of listening to the facts of the record alone and not speculate beyond that. So I am going to allow the State the peremptory challenge on that and I'm gonna overrule the *Batson* objection.

*Id.* at 4.

[6] The jury found Burns guilty as charged. The court sentenced Burns to nine years with four years executed and five years suspended to probation.

### *Discussion*

[7] The issue is whether the trial court properly denied Burns's *Batson* challenge. In *Batson v. Kentucky*, 476 U.S. 79, 86, 106 S. Ct. 1712, 1717 (1986), the United States Supreme Court held that "[p]urposeful racial discrimination in selection of the venire violates a defendant's right to equal protection because it denies him the protection that a trial by jury is intended to secure." A defendant's claim that the State has used a peremptory challenge to strike a potential juror solely on the basis of race is commonly known as a *Batson* challenge. The United States Supreme Court provided a three-step process for determining when a strike is discriminatory:

First, a defendant must make a prima facie showing that a peremptory challenge has been exercised on the basis of race;

second, if that showing has been made, the prosecution must offer a race-neutral basis for striking the juror in question; and third, in light of the parties' submissions, the trial court must determine whether the defendant has shown purposeful discrimination.

*Foster v. Chatman*, 136 S. Ct. 1737, 1747 (2016) (quoting *Snyder v. Louisiana*, 552 U.S. 472, 476-477, 128 S. Ct. 1203, 1207 (2008)). In the first step, "the burden is low, requiring that the defendant only show circumstances raising an inference that discrimination occurred." *Addison v. State*, 962 N.E.2d 1202, 1208 (Ind. 2012) (citing *Johnson v. California*, 545 U.S. 162, 170, 125 S. Ct. 2410, 2417 (2005)). "A step two explanation is considered race-neutral if, on its face, it is based on something other than race." *Cartwright v. State*, 962 N.E.2d 1217, 1220-1221 (Ind. 2012) (citing *Forrest v. State*, 757 N.E.2d 1003, 1004 (Ind. 2001) (citing *Hernandez v. New York*, 500 U.S. 352, 360, 111 S. Ct. 1859, 1866 (1991) (plurality opinion))). Although the burden of persuasion on a *Batson* challenge rests with the party opposing the strike, "the third step—determination of discrimination—is the duty of the trial judge." *Id.* (internal quotation marks omitted). The trial court evaluates the persuasiveness of the step two justification at the third step. *Id.*

[T]his procedure places great responsibility in the hands of the trial judge, who is in the best position to determine whether a peremptory challenge is based on an impermissible factor. This is a difficult determination because of the nature of peremptory challenges: They are often based on subtle impressions and intangible factors.

*Davis v. Ayala*, 135 S. Ct. 2187, 2208 (2015). "[T]he trial court's decision as to whether a peremptory challenge was discriminatory is given 'great deference' on appeal." *Collier v. State*, 959 N.E.2d 326, 329 (Ind. Ct. App. 2011) (quoting *Killebrew v. State*, 925 N.E.2d 399, 401 (Ind. Ct. App. 2010), *trans. denied*). The trial court's ruling on "the issue of discriminatory intent must be sustained unless it is clearly erroneous." *Snyder*, 552 U.S. at 477, 128 S. Ct. at 1207.

[8] Burns argues that the court erred by overruling his *Batson* objection to the striking of Potential Juror 14 and contends that the prosecutor's response and explanation for the peremptory strike is characterized as a demeanor-based explanation and that the court failed to make adequate credibility findings regarding the explanation.

[9] The State argues that the prosecutor offered two race-neutral reasons for the peremptory challenge and that the court explained why it found the prosecutor's assessment of Potential Juror 14's demeanor to be credible and why, based upon the responses to the prosecutor's questions, it found Potential Juror 14 to be less than decisive and less than committed to the principle of listening to the facts on the record alone.

[10] Burns's counsel made a *Batson* record and stated that Potential Juror 14 was the only African-American on the jury panel and that Burns was an African-American. Accordingly, the burden shifted to the State to offer a race-neutral basis for striking Potential Juror 14. We note that "[u]nless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be

deemed race neutral. Although the race-neutral reason must be more than a mere denial of improper motive, the reason need not be particularly 'persuasive, or even plausible.'" *Addison*, 962 N.E.2d at 1209 (citation omitted). The record indicates that the prosecutor explained that it was striking Potential Juror 14 because he answered affirmatively to being asked if he "was a what-if person" and that there "was a pause on whether [Potential Juror 14] could ultimately make a decision on the case." Transcript Volume 3 at 3. This was a race-neutral reason for the prosecutor's peremptory challenge of Potential Juror 14.

[11] As for the third step of the *Batson* analysis, the trial court found the prosecutor's race-neutral reason credible and persuasive. Indeed, the court echoed the concerns that Potential Juror 14 was "very hesitant in his responses" and that he characterized "himself as, using the words of the State, a what-iffer," before noting that the State is entitled to look at potential jurors and determine they are "someone less than decisive and less than committed to the principal [sic] of listening to the facts of the record alone and not speculate beyond that." *Id.* at 4. Based upon our review of the record, we cannot say under the circumstances that the court's ruling on Burns's objection to the State's peremptory challenge was clearly erroneous.

## *Conclusion*

[12] For the foregoing reasons, we affirm Burns's conviction for aggravated battery as a level 3 felony.

[13] Affirmed.

Baker, J., and Riley, J., concur.