

FILED

Jun 20 2017, 8:44 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Suzy St. John
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

James B. Martin
Deputy Attorney General
Indianapolis, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Eugene Roach,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | June 20, 2017<br><br>Court of Appeals Case No.<br>49A04-1608-CR-1918<br><br>Appeal from the Marion Superior<br>Court<br><br>The Honorable Ronnie Huerta,<br>Commissioner<br><br>Trial Court Cause No.<br>49G09-1601-F6-5 |

**Barnes, Judge.**

## Case Summary

[1]     Eugene Roach appeals his conviction for Class A misdemeanor resisting law

enforcement.  We remand.

## Issues

Roach raises two issues, but we address one dispositive issue, which we restate as whether the trial court properly denied his *Batson* challenge.[1]

## Facts

Indiana State Police Trooper Thomas Bennett was involved in a traffic stop in Marion County when a woman alerted him to a nearby situation. Trooper Bennett saw Roach and a woman near a bicycle and saw Roach hit the woman. Trooper Bennett yelled, "[H]ey, stop, police!" Tr. p. 135. Roach made eye contact with Trooper Bennett, got on his bicycle, and pedaled away. A bystander intervened and blocked Roach from leaving, and Trooper Bennett arrested Roach. The State charged Roach with Level 6 felony criminal confinement, Class A misdemeanor battery, and Class A misdemeanor resisting law enforcement. The State later dismissed the criminal confinement and battery charges.

During voir dire of Roach's jury trial on the resisting law enforcement charge, the State asked, "What are some duties of law enforcement officers that you can think of? Mr. James, what are some duties of law enforcement officers that you can think of?" Tr. p. 68. After discussing the matter with a couple of prospective jurors, the State asked, "Mr. Wilson, you got anything to add to

---

[1] Roach also argues that the trial court's order to pay probation fees was improper. Given our resolution of the *Batson* issue, we need not address the probation fees issue.

that?" *Id.* Prospective Juror Wilson ("Juror Wilson") responded, "Do the right thing." *Id.* Defense counsel also gave a hypothetical about the victim of an assault walking away from a police officer. She then asked, "How about you, Mr. Wilson? How do you feel about it?" *Id.* at 81. Juror Wilson responded, "I INAUDIBLE press charges." *Id.* These were the only verbal interactions with Juror Wilson evident on the record.

[5] The State apparently used a peremptory challenge to strike Juror Wilson. Defense counsel then told the trial court, "[I]t's possible we're raising a *Batson* challenge, because he was the only African American on the panel." *Id.* at 97. The trial court said, "It's a little premature still. INAUDIBLE juror seven." *Id.* Defense co-counsel then said, "I was about to say he was the only black man in the Jury pool . . . ." *Id.* Defense co-counsel then noted, "For the record, I note that Mr. Kevin Wilson, who is juror number fourteen is the only black male in the Jury pool. Our client is a black male." *Id.* at 98-99. Defense co-counsel argued that Juror Wilson's answers during voir dire were not different than two white males—Mr. Bercot and Mr. Coble—that were also questioned. In response, the State said:

> First, the reason that Mr. Wilson was struck was Mr. Wilson's body language throughout the entirety of voir dire, particularly given when Mr. Clapp was asking [a] question. The first thing that I wrote on my Jury questionnaire was skeptical and then I wrote disengaged. In addition to that, which I found problematic given the way that he was acting in the Jury box, given that combined with the fact that when Ms. Zuran questioned him about whether or not he would stop if a police officer asked him to stop, he said no, I wouldn't stop. So, given the facts of this

case, I think those two things combined lead to our strikes. Now, additionally, Ms. Frick said that she took some notes about Mr. Wilson not saying anything different from Mr. Bercot and from Mr. Coble. As far as I recall, Mr. Wilson didn't say anything different from juror, Jason Costa, who is a white male who we struck for the same reason that we struck Mr. Wilson. Those being that he tended to agree with the questions that defense was asking and his general attitude.

*Id.* at 99-100. Defense co-counsel responded:

I would note that in fact, Mr. Bercot did say that you would have a right to walk away and that there was no need to respond [to] an officer and again, for the record, I will note Mr. Bercot is a white male and I'd also note, I say this for respectively, but Mr. Seitz is not a mind reader. He can't tell whether or not Mr. Wilson was disengaged and skeptical. In fact, Ms. Eder, who is on the Jury said, she seemed reluctant in her responses. So, I would argue that her body language and responses were quite similar.

*Id.* at 100. The trial court then found: "Having listened to the arguments of both side[s], I don't see that the State struck him with a purposeful act of discrimination. So, I'm going to deny your challenge." *Id.* at 100-101.

[6]     The jury found Roach guilty as charged of Class A misdemeanor resisting law enforcement. The trial court sentenced Roach to 365 days with credit of forty-two days with the remainder suspended to non-reporting probation. Roach now appeals.

# Analysis

Roach argues that the trial court erred by overruling his *Batson* objection to the striking of Juror Wilson. It is well-settled that using a peremptory challenge to strike a potential juror solely on the basis of race violates the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. *Jeter v. State*, 888 N.E.2d 1257, 1262 (Ind. 2008) (citing *Batson v. Kentucky*, 476 U.S. 79, 106 S. Ct. 1712 (1986)), *cert. denied*. In *Batson*, the United States Supreme Court provided a three-step process for determining when a strike is discriminatory:

> "First, a defendant must make a prima facie showing that a peremptory challenge has been exercised on the basis of race; second, if that showing has been made, the prosecution must offer a race-neutral basis for striking the juror in question; and third, in light of the parties' submissions, the trial court must determine whether the defendant has shown purposeful discrimination."

*Foster v. Chatman*, 136 S. Ct. 1737, 1747 (2016) (quoting *Snyder v. Louisiana*, 552 U.S. 474, 476-477, 128 S. Ct. 1203, 1207 (2008)). "[I]n considering a *Batson* objection, or in reviewing a ruling claimed to be *Batson* error, all of the circumstances that bear upon the issue of racial animosity must be consulted." *Id.* at 1748.

> [T]his procedure places great responsibility in the hands of the trial judge, who is in the best position to determine whether a peremptory challenge is based on an impermissible factor. This is a difficult determination because of the nature of peremptory challenges: They are often based on subtle impressions and intangible factors.

*Davis v. Ayala*, 135 S. Ct. 2187, 2208 (2015). "[T]he trial court's decision as to whether a peremptory challenge was discriminatory is given 'great deference' on appeal . . . ." *Collier v. State*, 959 N.E.2d 326, 329 (Ind. Ct. App. 2011) (quoting *Killebrew v. State*, 925 N.E.2d 399, 401 (Ind. Ct. App. 2010), *trans. denied*). The trial court's ruling on "the issue of discriminatory intent must be sustained unless it is clearly erroneous." *Snyder*, 552 U.S. at 477, 128 S. Ct. at 1207.

[8]     In the first step, "the burden is low, requiring that the defendant only show circumstances raising an inference that discrimination occurred." *Addison v. State*, 962 N.E.2d 1202, 1208 (Ind. 2012) (citing *Johnson v. California*, 545 U.S. 162, 170, 125 S. Ct. 2410, 2417 (2005)). "This is commonly referred to as a 'prima facie' showing." *Id.* "Although the removal of some African American jurors by the use of peremptory challenges does not, by itself, raise an inference of racial discrimination, the removal of 'the only . . . African American juror that could have served on the petit jury' does 'raise an inference that the juror was excluded on the basis of race.'" *Id.* at 1208-09 (quoting *McCormick v. State*, 803 N.E.2d 1108, 1111 (Ind. 2004)) (internal citations omitted).

[9]     Here, the record indicates that Juror Wilson was the only African American male in the jury pool. It is unclear, however, whether there was an African American female in the jury pool. The State concedes that this issue is "now moot because the trial court directed the parties to step two . . . ." Appellee's Br. p. 14 (citing *Addison*, 962 N.E.2d at 1209 n.2). Consequently, we will move on to step two.

[10] In step two, "the burden shifts to the prosecution to 'offer a race-neutral basis for striking the juror in question.'" *Addison*, 962 N.E.2d at 1209 (quoting *Snyder*, 552 U.S. at 477, 128 S. Ct. 1203). "'Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral.'" *Id.* (quoting *Purkett v. Elem*, 514 U.S. 765, 768, 115 S. Ct. 1769, 1771 (1995)). Although the race-neutral reason must be more than a mere denial of improper motive, the reason need not be particularly "persuasive, or even plausible." *Id.*

[11] The State responded that it struck Juror Wilson based on his "body language . . . combined with the fact that when [defense counsel] questioned him about whether or not he would stop if a police officer asked him to stop, he said no, I wouldn't stop." Tr. p. 99. Roach concedes that "[n]either reason was based on Juror Wilson's race so the explanation was facially race-neutral." Appellant's Br. p. 10.

[12] In the final step of the analysis, the trial court "must determine whether the defendant has shown purposeful discrimination." *Addison*, 962 N.E.2d at 1209. The trial court must evaluate the persuasiveness of the step two justification. *Id.* at 1210. "It is then that 'implausible or fantastic justifications may (and probably will) be found to be pretexts for purposeful discrimination.'" *Id.* (quoting *Purkett*, 514 U.S. at 768, 115 S. Ct. at 1771). "The issue is whether the trial court finds the prosecutor's race-neutral explanation credible." *Id.* "'[T]he rule in *Batson* provides an opportunity to the prosecutor to give the reason for striking the juror, and it requires the judge to assess the plausibility of that

reason in light of all evidence with a bearing on it.'" *Id.* (quoting *Miller–El v. Dretke,* 545 U.S. 231, 251-52, 125 S. Ct. 2317, 2331 (2005)). "Also, at the third stage, the defendant may offer additional evidence to demonstrate that the proffered justification was pretextual." *Id.*

[13] One reason offered by the State as a reason for the strike was that "when [defense counsel] questioned [Juror Wilson] about whether or not he would stop if a police officer asked him to stop, he said no, I wouldn't stop." Tr. p. 99. In this interaction, defense counsel had proposed a hypothetical about whether a victim of a battery could walk away from a police officer. Defense counsel then asked, "How about you, Mr. Wilson? How do you feel about it?" *Id.* at 81. Juror Wilson responded, "I INAUDIBLE press charges." *Id.* The record does not, in fact, reveal that Juror Wilson said he would not stop for the police officer. "This mischaracterization of [the juror's] voir dire testimony is troubling and undermines the State's proffered race-neutral reason for the strike." *Addison*, 962 N.E.2d at 1215 (citing *Miller-El*, 545 U.S. at 244, 125 S. Ct. at 2327).

[14] The second reason offered by the State for the strike was a demeanor-based explanation. Roach argues that the proffered "body language" reason for striking Juror Wilson cannot support the strike because the trial court failed to make a finding that the demeanor-based reason was credible. The trial court here stated only: "Having listened to the arguments of both side[s], I don't see that the State struck him with a purposeful act of discrimination. So, I'm going to deny your challenge." Tr. p. 100-101.

[15]   In support of his argument, Roach relies on *Snyder*, 552 U.S. at 477, 128 S. Ct. at 1208. There, the prosecutor struck an African American prospective juror because of his "nervousness" and student-teaching obligation. *Snyder*, 552 U.S. at 478, 128 S. Ct. at 1208. The trial court denied the *Batson* challenge without explanation. On appeal, the United States Supreme Court noted:

> [R]ace-neutral reasons for peremptory challenges often invoke a juror's demeanor (*e.g.*, nervousness, inattention), making the trial court's firsthand observations of even greater importance. In this situation, the trial court must evaluate not only whether the prosecutor's demeanor belies a discriminatory intent, but also whether the juror's demeanor can credibly be said to have exhibited the basis for the strike attributed to the juror by the prosecutor. We have recognized that these determinations of credibility and demeanor lie "'peculiarly within a trial judge's province,'" and we have stated that "in the absence of exceptional circumstances, we would defer to [the trial court]."

*Id.* at 477, 128 S. Ct. at 1208 (internal citations omitted).

[16]   Despite the deference given to trial courts, the Supreme Court noted that "the record [did] not show that the trial judge actually made a determination concerning [the juror's] demeanor." *Id.* at 479, 128 S. Ct. at 1209.

> Rather than making a specific finding on the record concerning [the juror's] demeanor, the trial judge simply allowed the challenge without explanation. It is possible that the judge did not have any impression one way or the other concerning [the juror's] demeanor. [The juror] was not challenged until the day after he was questioned, and by that time dozens of other jurors had been questioned. Thus, the trial judge may not have recalled [the juror's] demeanor. Or, the trial judge may have found it

unnecessary to consider [the juror's] demeanor, instead basing his ruling completely on the second proffered justification for the strike. For these reasons, we cannot presume that the trial judge credited the prosecutor's assertion that [the juror] was nervous.

*Id.*, 128 S. Ct. at 1209.

[17] In addressing the second reason for the strike—the student teaching obligations—the Court compared the juror's situation to the situations of other jurors that were not stricken and concluded that the second reason was "pretextual" and gave "rise to an inference of discriminatory intent." *Id.* at 485, 128 S. Ct. at 1212. The Court then held:

> [I]n light of the circumstances here—including absence of anything in the record showing that the trial judge credited the claim that [the juror] was nervous, the prosecution's description of both of its proffered explanations as "main concern[s]," and the adverse inference noted above—the record does not show that the prosecution would have pre-emptively challenged [the juror] based on his nervousness alone. Nor is there any realistic possibility that this subtle question of causation could be profitably explored further on remand at this late date, more than a decade after petitioner's trial.

*Id.* at 485-86, 128 S. Ct. at 1212 (internal citations omitted). Consequently, the Court reversed the defendant's conviction.

[18] Following *Snyder*, the federal circuit courts are split regarding whether credibility findings by the trial court are required on the record. *See Morgan v. City of Chicago*, 822 F.3d 317, 330 n.30 (7th Cir. 2016). The Seventh Circuit has held: "When the stated basis for a strike is predicated on subjective evidence

like the juror's demeanor, we typically have held that a trial court clearly errs by neglecting to state expressly its credibility findings on the record." *Id.* at 329.

[19] Our supreme court also relied on *Snyder* when it decided *Addison*, 962 N.E.2d 1202. In addressing the third step of the *Batson* analysis and whether findings were necessary, the court noted:

> [I]t is not at all clear that the trial court properly discharged its third-stage duty of determining whether Addison had shown purposeful discrimination. For example the trial court did not indicate whether or why it found the State's proffered explanation credible. Although at least one federal circuit court has declared "federal law has never required explicit fact-findings following a *Batson* challenge, especially where a prima facie case is acknowledged and the prosecution presents specific nondiscriminatory reasons on the record," *Stenhouse v. Hobbs*, 631 F.3d 888, 893 (8th Cir. 2011) (quoting *Smulls v. Roper*, 535 F.3d 853, 860 (8th Cir. 2008) (en banc)), nonetheless by simply declaring, without more, that the State "articulated race neutral reasons for striking all three jurors," Tr. at 93-94, the trial court appears to have combined stages two and three of the *Batson* inquiry. This was incorrect. "The analytical structure established by *Batson* cannot operate properly if the second and third steps are conflated." *United States v. Rutledge*, 648 F.3d 555, 559 (7th Cir. 2011) (remanding cause to the trial court for an explicit step-three credibility finding to support its decision denying a *Batson* challenge).

*Addison*, 962 N.E.2d at 1210. Ultimately, our supreme court determined: "The State's mischaracterization of Turner's voir dire testimony, its failure to engage Turner in any meaningful voir dire examination to explore his alleged undue reliance on the testimony of professionals, and the comparative juror analysis,

when taken collectively, leave us with the firm impression that the State's proffered explanation for striking venireperson Turner was a mere pretext based on race, making a fair trial impossible." *Id.* at 1217. The court reversed and remanded for a new trial based on the *Batson* violation.

[20] Then, in *Blackmon v. State*, 47 N.E.3d 1225 (Ind. Ct. App. 2015), this court held, relying on *Addison* and *Snyder*, that "a trial court is not required to make explicit fact-findings following a *Batson* challenge." *Blackmon*, 47 N.E.3d at 1233. We distinguished *Snyder* because of the short amount of time between the challenge and the questioning of the juror and the trial court's ability to remember the juror's demeanor. We assumed that the trial court listened to and considered the parties' arguments and held that "[t]he trial court, not the appellate court, is in the best position to consider the juror's demeanor, the nature and strength of the parties' arguments, and the attorney's demeanor and credibility." *Id.* at 1234. Consequently, we concluded that the trial court did not err by denying the defendant's *Batson* challenge.

[21] Although Indiana courts have not specifically required credibility findings in all *Batson* challenges involving demeanor-based reasons, we are left here with little ability to review the trial court's decision without such findings. Although the State professed two reasons for striking Juror Wilson, we have concluded that one of the reasons was not supported by the record, leaving only the demeanor-based reason for Juror Wilson's dismissal. It is impossible for us to determine which reason the trial court used to deny the *Batson* challenge or if it found both reasons persuasive. As in *Snyder*, we cannot presume that the trial court

"credited the prosecutor's assertion" that Juror Wilson's body language was inappropriate. *Snyder*, 552 U.S. at 479, 128 S. Ct. at 1209. Recognizing the difficulty in exploring the credibility of the State's demeanor-based explanation long after a trial, the United States Supreme Court reversed in *Snyder*. Here, however, less than one year has passed since the trial as compared to the decade that had passed in *Snyder*. The Seventh Circuit has resolved such situations where there is "an evidentiary gap at step three" by "remanding the case to 'find out what the district court perceived.'" *Morgan*, 822 F.3d at 331 (quoting *Rutledge*, 648 F.3d at 560). Although we recognize the difficulty, and perhaps impossibility, of a trial court recalling a prospective juror's demeanor months after the trial, given our deference to the trial court in such matters, we believe this course should be our first step. If, of course, the trial court is unable to recall the prospective juror's demeanor and make a determination regarding the credibility of the State's reason for the strike, a new trial is required.

## Conclusion

We remand for the trial court to make findings regarding the State's demeanor-based reason for striking Juror Wilson. Remanded.

Kirsch, J., and Robb, J., concur.