

**FILED**

Jun 26 2019, 9:38 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Timothy J. O'Connor
O'Connor & Auersch
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General

Chandra K. Hein
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Antonio R. Whitfield,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff* | June 26, 2019<br><br>Court of Appeals Case No.<br>18A-CR-2428<br><br>Appeal from the Marion Superior<br>Court<br><br>The Honorable Stanley E. Kroh,<br>Magistrate<br><br>Trial Court Cause No.<br>49G03-1802-F5-5109 |

**Crone, Judge.**

## Case Summary

[1] Antonio R. Whitfield appeals his conviction for level 5 felony burglary following a jury trial. He contends that the trial court clearly erred in determining that he failed to demonstrate that the State's peremptory challenge

to a venireperson was based on her race in violation of the Fourteenth Amendment to the United States Constitution. Finding no error, we affirm.

## Facts and Procedural History

On February 10, 2018, around 5:00 a.m., David Marroquin heard a loud noise outside his home and looked outside. He saw a man wearing what looked like a ski mask entering the house under construction next door, and he called 911. Police officers arrived at the house and discovered that the home's rear screen door was cut and partially opened, the doorframe was damaged, and the interior door was partially opened. Police and a canine unit entered the house and announced their presence with no response. They found some boxes near the back door, a crowbar near the stairs, and Whitfield in the exposed rafters of the second floor.

Police arrested Whitfield and requested that the construction superintendent report to the house. When he arrived, he told police that he was the only person with a key to the house and that he had locked up the house the previous evening around 6:00 p.m. When he locked up, the screen door had been intact, and the door frame had been undamaged. He also stated that there had been three unopened boxes of mosaic title, worth $500 to $600, by the front door, but those boxes were now by the back door and one box had been partially opened. Finally, he said that there had not been a crowbar in the house.

[4]     In February 2018, the State charged Whitfield with level 5 felony burglary, level 6 felony theft, and class B misdemeanor criminal mischief. The State later moved to dismiss the theft charge, which the trial court granted. In addition, the State amended the charging information to include a habitual offender enhancement.

[5]     On August 23, 2018, Whitfield's jury trial commenced. During jury selection, fourteen members of the jury pool were empaneled for questioning. L.M. was the sole African American on the panel. On her juror questionnaire, L.M. wrote that she was "[n]ot sure" that she could be a fair and impartial juror in a criminal trial and explained that she had "a low expectation of minorities receiving justice in [the] American Court System." Appellant's Supp. App. Vol. 2 at 3. She also wrote that she had family members who had been arrested for or charged with a crime. During voir dire, the trial court asked L.M. about the juror questionnaire and whether she believed that minorities were not always treated fairly by the system, and she answered, "Yes." Tr. Vol. 2 at 37. The prosecutor asked L.M. whether she could be fair and impartial today, and she said, "Yes." *Id.* The prosecutor also asked her whether, if the State presented evidence that firmly convinced her of the defendant's guilt, she would be able to find the defendant guilty, and she responded affirmatively. *Id.* During defense counsel's voir dire, L.M. indicated that she wanted to ask a question about the meaning of reasonable doubt. *Id.* at 40-41. She asked whether reasonable doubt meant that "there's no doubt that somebody else had the same opportunity to commit the crime that the person is accused of." *Id.* at

41. Defense counsel explained that "if you have reasonable doubt remaining that this person could not have done the thing then you have to – you're obligated to find him not guilty." *Id*. However, L.M. indicated that defense counsel had not answered her question. *Id*. Defense counsel later re-questioned L.M. about the meaning of reasonable doubt. After some discussion, she eventually said, "I guess if they can prove beyond a reasonable doubt that this person did this, then, yes – … – I'd find him guilty." *Id*. at 53-54 (defense counsel's one-word interruption omitted).

[6]     During the first round of strikes, the State sought to peremptorily strike L.M. *Id*. at 55. Whitfield raised a *Batson* claim;[1] that is, he objected that the prosecution was using a peremptory strike to remove L.M. on account of her race in violation of the Equal Protection Clause of the United States Constitution. *Id*. The trial court stated that a prima facie showing of racial discrimination had been made given that L.M. was the only minority on the fourteen-person panel. The trial court then asked the State whether it wanted to make a record of its reasons for its peremptory strike of L.M. In support of the strike, the prosecutor said that there were "a handful or reasons": (1) L.M. wrote on her juror questionnaire that "basically she couldn't be fair and impartial" and had "a low expectation of minorities receiving justice in the court system[,]" which evidenced a bias against the State; (2) she also wrote that she had family members who had been arrested for or charged with a

---

[1] *Batson v. Kentucky*, 476 U.S. 79 (1986).

crime; (3) during voir dire, L.M. seemed "unclear on her ability to be fair and impartial and seemed to waiver [sic] significantly about whether she could find guilt even if the elements were proven beyond a reasonable doubt"; (4) based on her interaction with the prosecutor, she did not seem to want to be in court; (5) she did not seem to be interactive with the prosecutor and was more interactive with defense counsel; and (6) the prosecutor "didn't get a good vibe from her based on what she was saying." *Id*. at 55-57.

[7] The trial court then asked whether defense counsel would like to respond. Whitfield's counsel argued that it was unfair to strike black persons for thinking that the court system was unfair because they have a good reason to think that the system is unfair, and if such a reason was accepted, then black jurors would be disproportionately struck. *Id*. at 57. Defense counsel also argued that L.M.'s body language was no different than that of a white venireperson, and in defense counsel's opinion, neither venireperson demonstrated an unwillingness to be in court. *Id*. at 57-58. Further, defense counsel noted that L.M. answered that she could be impartial and render a guilty verdict if the State met its burden of proof. *Id*. at 58.

[8] The trial court concluded,

> The prima facia [sic] finding has been made due to this juror
> being the only minority in this group of 14, so that's been met.
> The believes– and the Court's heard the State's reasons for them
> – for their exercise of the preemptory [sic] and also considered
> your response and the Court finds that the State did not
> improperly exercise the preemptory [sic] strike due to the reasons

that they gave. I – because of the reasons the State has given, I didn't see this as a pretext, or a striking of a juror solely because of her race. And the Court does find that the State's properly exercised it's [sic] preemptory [sic] strike.

….

The Court heard the State give reasons other than that expectation of minorities receiving justice in the court system. The comments that [the prosecutor] made regarding his interactions with the juror – prospective juror and the other comments that [the prosecutor] gave, the Court doesn't see it as only that issue of the juror[']s expression of the answer on paragraph one on the second page of the questionnaire, so it just doesn't appear to the Court that the State has unfairly abused or illegally used their preemptory [sic], given the other reason that they gave.

*Id*. at 58-59. Before moving on to other matters, the prosecutor pointed out that there were other minority members in the gallery who had indicated that they could be fair and impartial on their questionnaire. The trial court dismissed L.M., and the trial proceeded. In its final form, the jury included a member of a minority group.

[9] The jury found Whitfield guilty of burglary and criminal mischief, and he pled guilty to being a habitual offender. At sentencing, the trial court vacated the criminal mischief conviction based on double jeopardy considerations. The trial court sentenced Whitfield to three years for the burglary conviction and three years for the habitual offender enhancement. This appeal ensued.

## Discussion and Decision

[10] Whitfield argues that the trial court erred in concluding that the State, in seeking to strike L.M., was not purposefully discriminating against her based on her race. "Purposeful racial discrimination in selection of the venire violates a defendant's right to equal protection because it denies him the protection that a trial by jury is intended to secure." *Batson v. Kentucky*, 476 U.S. 79, 86 (1986).[2] "The exclusion of even a sole prospective juror based on race, ethnicity, or gender violates the Fourteenth Amendment's Equal Protection Clause." *Addison v. State*, 962 N.E.2d 1202, 1208 (Ind. 2012).

[11] "'Upon appellate review, a trial court's decision concerning whether a peremptory challenge is discriminatory is given great deference, and will be set aside only if found to be clearly erroneous.'" *Cartwright v. State*, 962 N.E.2d 1217, 1221 (Ind. 2012) (quoting *Forrest v. State*, 757 N.E.2d 1003, 1004 (Ind. 2001)); *see also Jeter v. State*, 888 N.E.2d 1257, 1265 (Ind. 2008) ("On appeal, a trial court's ruling on the issue of discriminatory intent must be sustained unless it is clearly erroneous.") (citing *Snyder v. Louisiana*, 552 U.S. 472, 478 (2008)). "The trial court's conclusion that the prosecutor's reasons were not pretextual is essentially a finding of fact that turns substantially on credibility. It is therefore accorded great deference." *Highler v. State*, 854 N.E.2d 823, 828 (Ind. 2006).

---

[2] Under *Batson*, a race-based peremptory challenge also violates the equal protection rights of the juror, and therefore *Batson* prohibits parties from using racially based peremptory challenges regardless of the race of the opposing party. *Ashabraner v. Bowers*, 753 N.E.2d 662, 666-67 (Ind. 2001).

[12] "Pursuant to *Batson* and its progeny, a trial court must engage in a three-step process in evaluating a claim that a peremptory challenge was based on race." *Cartwright*, 962 N.E.2d at 1220. At the first step, the defendant must make a prima facie showing that there are "circumstances raising an inference that discrimination occurred." *Addison*, 962 N.E.2d at 1208. At the second step, if the defendant makes a prima facie showing, the burden shifts to the prosecution to "'offer a race-neutral basis for striking the juror in question.'" *Id*. at 1209 (quoting *Snyder*, 552 U.S. at 477). "A race-neutral explanation means 'an explanation based on something other than the race of the juror.'" *Highler*, 854 N.E.2d at 827 (quoting *Hernandez v. New York*, 500 U.S. 352, 360 (1991)). "Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral." *Addison*, 962 N.E.2d at 1209 (quoting *Purkett v. Elem*, 514 U.S. 765, 768 (1995)). "[T]he issue is the facial validity of the prosecutor's explanation." *McCormick v. State*, 803 N.E.2d 1108, 1111 (Ind. 2004) (quoting *Purkett*, 514 U.S. at 768).

[13] Even if the State's reasons appear on their face to be race-neutral, at the third step, the trial court must perform the essential task of assessing whether the State's facially race-neutral reasons are credible. *Addison*, 962 N.E.2d at 1209. The second and third steps must not be conflated. *See id*. at 1210 ("The analytical structure established by *Batson* cannot operate properly if the second and third steps are conflated.") (quoting *United States v. Rutledge*, 648 F.3d 555, 559 (7th Cir. 2011)). In determining whether the State's explanation for the strike is credible and not a pretext for discriminatory intent, the trial court must

consider the State's explanation "in light of all evidence with a bearing on it." *Id.* (quoting *Miller-El v. Dretke*, 545 U.S. 231, 251-52 (2005)); *see also Snyder*, 552 U.S. at 478 ("[I]n considering a *Batson* objection, or in reviewing a ruling claimed to be *Batson* error, all of the circumstances that bear upon the issue of racial animosity must be consulted."). Although this third step requires the trial court to evaluate "the persuasiveness of the justification" proffered by the prosecutor, "the ultimate burden of persuasion regarding racial motivation rests with, and never shifts from, the opponent of the strike." *Highler*, 854 N.E.2d at 828 (quoting *Purkett*, 514 U.S. at 768). At this stage, the defendant may offer additional evidence to demonstrate that the prosecutor's reasons are pretextual. *Addison*, 962 N.E.2d at 1210. Then, "in light of the parties' submissions, the trial court must determine whether the defendant has shown purposeful discrimination." *Id.* at 1209 (quoting *Snyder*, 552 U.S. at 477).

[14] Here, Whitfield argues that the trial court committed clear error at the third step by failing to explicitly credit the State's demeanor-based reasons.[3] The State justified its strike, in part, by explaining that L.M. did not seem to want to be in court, was not interactive with the prosecutor, and was more interactive with defense counsel. Defense counsel disputed the prosecutor's description of L.M.'s demeanor and argued that L.M. exhibited the same behavior as a white

---

[3] The parties do not dispute that the first two steps of the *Batson* inquiry are satisfied. We also note that "where … a prosecutor has offered a race-neutral explanation for the peremptory challenge and the trial court has ruled on the ultimate question of intentional discrimination, the preliminary issue of whether the defendant had made a prima facie showing of purposeful discrimination becomes moot." *Cartwright*, 962 N.E.2d at 1222; *accord Addison*, 962 N.E.2d at 1209 n.2.

venireperson. Whitfield is correct that "[i]f a prosecutor's proffered reason for striking a black panelist applies just as well to an otherwise-similar nonblack who is permitted to serve, that is evidence tending to prove purposeful discrimination to be considered at *Batson*'s third step." *Id*. at 1210 (quoting *Miller-El*, 545 U.S. at 241). Also, if a prosecutor mischaracterized a venireperson's demeanor in justifying a peremptory strike, then that would arguably be evidence that the State's demeanor-based reason was a pretext for purposeful discrimination. *See Roach v. State*, 79 N.E.3d 925, 929 (Ind. Ct. App. 2017) ("[M]ischaracterization of [the juror's] voir dire testimony is troubling and undermines the State's proffered race-neutral reason for the strike.") (quoting *Addison*, 962 N.E.2d at 1215).

[15] Although defense counsel challenged the State's demeanor-based justifications, the trial court did not indicate that it found the State's demeanor-based reasons credible. Rather, the trial court provided a more general ruling that "because of the reasons the State [had] given," the State was not "striking [L.M.] solely because of her race." Tr. Vol. 2 at 58. Whitfield asserts that "without a finding by the trial court regarding the juror's demeanor, this court cannot conclude that the State's interpretation of L.M.'s demeanor was accurate." Appellant's Br. at 18.

[16] Our supreme court has not held that a trial court is required to make explicit factual findings when ruling on a *Batson* challenge. *See Cartwright*, 962 N.E.2d at 1222 (rejecting defendant's contention that trial court must explicitly state reasons for deciding a *Batson* challenge and noting that at least one federal

circuit court has declared that federal law has never required explicit fact-findings) (citing *Stenhouse v. Hobbs*, 631 F.3d 888, 893 (8th Cir. 2011)), *cert. denied*; *Addison*, 962 N.E.2d at 1210 (also citing *Stenhouse*, 631 F.3d at 893); *see also Richardson v. State*, No. 18A-CR-2263, 2019 WL 1721720, at *4 (Ind. Ct. App. Apr. 18, 2019) (noting that trial court not required to make factual findings to support its determination), *trans. denied*. However, demeanor-based reasons have at least two unique qualities that would make factual findings particularly helpful to appellate review. First, the trial court's role in assessing demeanor-based reasons is especially valuable. As the United States Supreme Court has noted,

> Race-neutral reasons for peremptory challenges often invoke a juror's demeanor (e.g., nervousness, inattention), making the trial court's firsthand observations of even greater importance. In this situation, the trial court must evaluate not only whether the prosecutor's demeanor belies a discriminatory intent, but also whether the juror's demeanor can credibly be said to have exhibited the basis for the strike attributed to the juror by the prosecutor. We have recognized that these determinations of credibility and demeanor lie "peculiarly within a trial judge's province."

*Snyder*, 522 U.S. at 477 (quoting *Hernandez*, 500 U.S. at 365).

[17] Second, appellate review is based on a cold transcript, which cannot provide a complete picture of a juror's demeanor. Because of these qualities, circumstances which necessitate factual findings for adequate appellate review are likely to arise. For example, in *Roach*, 79 N.E.3d 925, another panel of this

Court remanded for the trial court to make findings regarding the prosecutor's demeanor-based reason for striking a potential juror. In that case, the prosecutor sought to strike the only African-American male in the venire based on his body language and because the juror stated that he would not stop if a police officer asked him to stop. The trial court ruled, "Having listened to the arguments of both side[s], I don't see that the State struck him with a purposeful act of discrimination. So, I'm going to deny your challenge." *Id*. at 929. On appeal, the *Roach* court found that the record did not support the prosecutor's characterization of the juror's voir dire testimony. *Id*. Because the non-demeanor-based reason was not supported by the record and the trial court made no findings as to whether it found the demeanor-based reason credible, the *Roach* court found it "impossible for us to determine which reason the trial court used to deny the *Batson* challenge or if it found both reasons persuasive." *Id*. at 931. The *Roach* court acknowledged that Indiana courts had not specifically required findings, but noted that the federal circuit courts are split regarding whether credibility findings by the trial court are required on the record. *Id*. at 930 (citing *Morgan v. City of Chicago*, 822 F.3d 317, 330 n.30 (7th Cir. 2016)).[4] The *Roach* court noted that less than one year had passed since trial and therefore remanded for the trial court to make findings regarding the State's demeanor-based reason. *Id*. at 932; *cf. Killebrew v. State*, 925 N.E.2d 399,

---

[4] "The Seventh Circuit has held: 'When the stated basis for a strike is predicated on subjective evidence like the juror's demeanor, we typically have held that a trial court clearly errs by neglecting to state expressly its credibility findings on the record.'" *Roach*, 79 N.E.3d at 930 (quoting *Morgan*, 822 F.3d at 329).

403 (Ind. Ct. App. 2010) (reversing and remanding for new trial where trial court made no express finding that State's demeanor-based reason was credible and other reason applied equally to two other white venirepersons who were not struck), *trans. denied*.

[18]     Here, in addition to the demeanor-based reasons, the State provided other reasons for the strike. The State explained that L.M. did not indicate on her questionnaire that she could be fair and impartial, she had family members who had been arrested for or charged with a crime, and based on her statements during voir dire, she seemed unclear on her ability to be fair and impartial and whether she could find guilt even if the elements of the crime where proven beyond a reasonable doubt. Whitfield does not argue that the other reasons are unsupported by the record or pretexts for purposeful discrimination.[5] Indeed, in *Highler*, 854 N.E.2d at 827, our supreme court concluded that the State's reasons for striking an African-American venireperson, one of which was that the venireperson's statements in his questionnaire and during voir dire raised questions about his ability to be fair and impartial to the State, were race-

---

[5] Whitfield briefly argues,

> Another of the State's proffered reasons for striking L.M. is that she reported having a low expectation of minorities receiving fair treatment in the criminal justice system. But, as the defense pointed out, allowing such a strike would likely affect a large swath of minority populations and would result in disproportionally striking minority jurors. Indeed, only by members of minority groups serving on juries can that perception be mollified.

Appellant's Br. at 18. That is the entirety of his argument, and his failure to cite any authority for it waives the issue for our review. *See Smith v. State*, 822 N.E.2d 193, 202-03 (Ind. Ct. App. 2005) ("[A] party waives any issue raised on appeal where the party fails to develop a cogent argument or provide adequate citation to authority and portions of the record."), *trans. denied*; Ind. Appellate Rule 46(A)(8) (stating that appellant's brief must contain contentions on issues presented and that each contention must be supported by cogent reasoning and citations to authorities and statutes relied on).

neutral, and the court upheld the trial court's determination that the reasons were not pretexts for purposeful discrimination. In addition, our supreme court has concluded that the trial court did not err in determining that the State's peremptory strike was not racially motivated where the prosecutor's concern that the venireperson would sympathize with the defendant as a result of that person's past experience was race-neutral and fully supported by the record. *Wright v. State*, 690 N.E.2d 1098, 1105 (Ind. 1997). And, our supreme court has held that a peremptory strike based on the criminal conviction of the venireperson's family member did not violate *Batson*. *Nicks v. State*, 598 N.E.2d 520, 523 (Ind. 1992); *see also Douglas v. State*, 636 N.E.2d 197, 199 (Ind. Ct. App. 1994) ("[T]he exercise of a peremptory challenge is not violative of *Batson* where the challenged individual or family member has had previous involvement with the criminal justice system.").

[19] Thus, even if we decline to place any weight on the prosecutor's demeanor-based reasons because the trial court did not explicitly find them to be credible, the prosecutor's other proffered reasons provide a sound basis to affirm the trial court's determination that the strike was not motivated by a discriminatory purpose. Although we are able to affirm in this case without explicit findings, making such findings is clearly the better practice. In cases where the State seeks to strike a potential juror based on the juror's demeanor and the defense disputes the State's description of the juror's demeanor, we encourage the trial court to make factual findings regarding its observations of the juror's demeanor when ruling on a *Batson* challenge.

[20]    Based on the foregoing, we affirm Whitfield's conviction.

[21]    Affirmed.


Bradford, J., and Tavitas, J., concur.