

FILED

Jul 23 2020, 8:37 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Brandon E. Murphy
Cannon Bruns & Murphy, LLC
Muncie, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

George P. Sherman
Supervising Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Jessica M. Skeens,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

July 23, 2020

Court of Appeals Case No.
19A-CR-2475

Appeal from the Delaware Circuit Court

The Honorable Linda Ralu Wolf, Judge

Trial Court Cause No.
18C03-1706-F1-8

**Crone, Judge.**

## Case Summary

[1] Jessica M. Skeens consumed alcohol and marijuana, failed to properly restrain several of her children in her van, got into an argument with her boyfriend while speeding on the highway, and lost control of the van, which ran off the highway and rolled over. One of Skeens's children was partially ejected from

the van and killed. The State charged Skeens with numerous offenses. After a trial, the jury found Skeens guilty of level 1 felony neglect of a dependent resulting in death, three counts of level 6 felony neglect of a dependent, and class B misdemeanor marijuana possession. The trial court sentenced her to forty-one years. Skeens now appeals, arguing that her level 1 felony conviction is not supported by sufficient evidence, that the trial court erred in admitting certain testimony and instructing the jury, and that her sentence is inappropriate in light of the nature of the offenses and her character. We affirm her convictions and sentence.

## Facts and Procedural History

[2] The facts most favorable to the convictions follow. Skeens had four children, the oldest of whom was six-year-old T.W. On May 28, 2017, Skeens drank alcohol and smoked marijuana. She and her boyfriend Nathaniel Jordan decided to take the children to the Muncie Children's Museum. Skeens put all four children in her van and failed to properly restrain three of them, including T.W., who was not secured in a car seat as required by law. The van's right front tire had no tread, the left rear tire was a spare, the van's frame was bent, and the wheels were out of alignment.

[3] Skeens drank whiskey from a water bottle while driving. She began arguing with Jordan and parked on the shoulder of State Road 67. Skeens and Jordan got out of the van and continued arguing. He threw her bottle into a field and threw her keys into the middle of the road. Skeens called a friend and asked to be picked up, but then she retrieved her keys and continued driving down the

highway.  Skeens and Jordan, who were not wearing seatbelts, resumed their argument and started trading blows.  Skeens lost control of the van, which ran off the right side of the road at sixty-four miles per hour, nine miles per hour over the posted speed limit.  The van rolled over and came to a stop 100 feet off the highway.  T.W. was partially ejected through one of the van's windows and died from multiple traumatic blunt force injuries.

[4]  Police officers were dispatched to the scene.  Skeens was belligerent and smelled of an alcoholic beverage.  Her eyes were twitching and glassy, and her speech was slurred.  Inside and outside the van, officers found numerous beer and liquor bottles, a marijuana pipe, and a prescription bottle with Skeens's name containing marijuana.  Skeens's arm was fractured, and she was taken to the hospital.  A blood sample was taken, which tested positive for THC metabolites and indicated that her blood alcohol level was .063.  During a police interview that same day, Skeens admitted that she had been drinking and stated, "[S]omething happened to my car because it's not in good shape.  You can't drive it.  It's terrible to drive.[…]  I shouldn't be driving at all."  Ex. Vol. 5 at 15 (State's Ex. 3).

[5]  The State charged Skeens with level 1 felony neglect of a dependent resulting in death, level 4 felony causing death when operating a motor vehicle with a schedule I or II controlled substance in the blood, level 5 felony causing death when operating a motor vehicle while intoxicated, level 5 felony reckless homicide, three counts of level 6 felony neglect of a dependent, class B misdemeanor marijuana possession, and class C misdemeanor operating a

motor vehicle without ever receiving a license. At trial, forensic toxicologist Dr. Sheila Arnold testified that Skeens was impaired at the time of the crash from consuming alcohol and marijuana, which "have different pathways through which they cause impairment[,]" and thus the "combined impairment increase[ed] the overall impairment of each [substance] individually." Tr. Vol. 2 at 166. Indiana State Trooper Coley McCutcheon testified that T.W. "should have been in some form of booster seat" and that she "could have come out of the base of [her] seatbelt" because her shoulder belt had not been properly secured. Tr. Vol. 3 at 12, 9. Indiana State Trooper and certified accident reconstructionist Scott Keegan testified over objection that Skeens was impaired at the time of the crash, that T.W.'s "chances of not being hurt [would have been] greatly improved" if she had "been properly restrained in a child safety seat," and that T.W.'s death resulted from her not being "properly restrained in a car seat at the time." *Id.* at 57, 60. Trooper Keegan testified without objection that "[i]t is the driver's responsibility […] that children in all positions of the vehicle are restrained" and that "several factors played a role" in the crash, including "that there were improper tires on the vehicle[,]" that Skeens was "impaired by alcohol and THC" and "was not using a seatbelt while driving[,]" and "that the vehicle was speeding[.]" *Id.* at 55, 59.

[6] The jury found Skeens guilty on all but the reckless homicide and operating without a license counts. The trial court entered judgment of conviction on the neglect and marijuana possession counts and sentenced Skeens to thirty-five years on the level 1 felony count and two years on each of the level 6 felony

counts, all consecutive, for a total of forty-one-years; the court also imposed a concurrent six-month sentence on the marijuana possession count. Skeens now appeals. Additional facts will be provided below.

# Discussion and Decision

## Section 1 – Skeens has waived any argument regarding the admissibility of Trooper Keegan's opinions.

[7] We first address Skeens's argument that the trial court erred in admitting, over her objections, Trooper Keegan's testimony that she was impaired at the time of the crash and that T.W. died because she had not been properly restrained in a car seat. At trial, Skeens objected to this testimony because she had not received pretrial notice of the trooper's opinions. *See id*. at 35 ("Judge, this is not in his report and I consider this to be an expert opinion that I am entitled to some pretrial notice of."), 56 ("Judge, again, this is an expert opinion. I was given no notice that he was going to render this opinion."). On appeal, she argues for the first time that the trial court erred in admitting those opinions because Trooper Keegan was not qualified to render them.

[8] A trial court cannot be found to have erred as to an argument that it never had an opportunity to consider; accordingly, as a general rule, a party may not present an argument on appeal unless the party raised that argument before the trial court. *Washington v. State*, 808 N.E.2d 617, 625 (Ind. 2004). "In such

circumstances the argument is waived." *Id.*[1] Moreover, Trooper Keegan's opinion regarding Skeens's impairment is merely cumulative of Dr. Arnold's opinion, and he reiterated his opinion later in his testimony without objection. Accordingly, any error in the admission of that opinion is harmless. *Brittain v. State*, 68 N.E.3d 611, 621 (Ind. Ct. App. 2017), *trans. denied*. The same is true for Trooper Keegan's opinion regarding the cause of T.W.'s death, which is largely cumulative of Trooper McCutcheon's testimony. *See.* Tr. Vol. 3 at 12 (Trooper McCutcheon: "[T.W.] should have been in some form of booster seat. So simply being in that seatbelt by itself is not properly worn. She was not properly restrained in the vehicle as she should have been."), 9 ("[W]ith her small stature being in that seatbelt improperly, she could have come out of the base of that seatbelt.").

## Section 2 – Skeens's sufficiency argument is based on a false premise.

[9] Next, we address Skeens's challenge to the sufficiency of the evidence supporting her conviction for level 1 felony neglect of a dependent causing death. To convict Skeens of level 1 felony neglect, the State had to prove beyond a reasonable doubt that Skeens, being at least eighteen years of age and having the care of T.W., a dependent less than fourteen years of age, knowingly

---

[1] Skeens makes a three-sentence, citation-free argument that it was "particularly egregious" that the State did not disclose Trooper Keegan's opinions before trial. Appellant's Br. at 22. This argument is also waived. *Whitfield v. State*, 127 N.E.3d 1260, 1268 n.5 (Ind. Ct. App. 2019) (finding citation-free argument waived due to lack of cogency), *trans. denied*.

placed T.W. in a situation that endangered her life or health, and which resulted in her death. Appellant's App. Vol. 2 at 29 (charging information); Ind. Code § 35-46-1-4. Citing *Patel v. State*, 60 N.E.3d 1041 (Ind. Ct. App. 2016), Skeens argues that the State was obligated to present "medical or scientific expert" testimony that a particular act or omission on her part resulted in T.W.'s death, and that the State's failure to present such testimony requires that we reduce her conviction to a level 6 felony. Appellant's Br. at 16.

[10] We disagree with the premise of Skeens's argument. In *Patel*, the defendant used drugs that she had purchased online to terminate her pregnancy at home; the baby was born alive but died shortly thereafter. The State charged Patel with class A felony (now level 1 felony) neglect, alleging that the baby died as a result of Patel's failure to provide medical care after its birth. The jury found Patel guilty as charged. On appeal, Patel challenged the sufficiency of the evidence regarding causation, arguing that "the State failed to elicit … testimony from its medical experts" that "the baby's death would not have occurred but for Patel's failure to provide medical care immediately after its birth." *Patel*, 60 N.E.3d at 1053, 1052. This Court agreed that the State failed to prove causation and therefore reduced Patel's conviction to a class D (now a level 6) felony. We did not specifically hold that medical expert testimony was required to establish causation; we simply addressed the argument as framed by Patel, and the State pointed to no other competent evidence regarding causation. But even assuming that medical expert testimony would have been required to prove causation in *Patel*, we note that this case presented no medical

or scientific issues with respect to causation, and therefore no medical or scientific expert testimony was required. Because this is the extent of Skeens's sufficiency argument, we do not address it further.

## Section 3 – Skeens has failed to establish that the trial court abused its discretion in instructing the jury on causation.

Skeens also contends that the trial court erred in instructing the jury on causation. "The purpose of jury instructions is to inform the jury of the law applicable to the facts without misleading the jury and to enable it to comprehend the case clearly and arrive at a just, fair, and correct verdict." *Davis-Martin v. State*, 116 N.E.3d 1178, 1191-92 (Ind. Ct. App. 2019), *trans. denied*. "The manner of instructing a jury lies largely within the discretion of the trial court, and we will reverse only for an abuse of discretion." *Carter v. State*, 31 N.E.3d 17, 25 (Ind. Ct. App. 2015), *trans. denied*. "In determining whether a trial court abused its discretion by declining to give a tendered jury instruction, we consider (1) whether the tendered instruction correctly states the law; (2) whether there was evidence presented at trial to support giving the instruction; and (3) whether the substance of the instruction was covered by other instructions that were given." *Id.* "We consider jury instructions not in isolation, but as a whole, with reference to each other." *Id.* "To constitute an abuse of discretion, the instructions given must be erroneous, and the instructions taken as a whole must misstate the law or otherwise mislead the jury." *Merriweather v. State*, 128 N.E.3d 503, 512 (Ind. Ct. App. 2019) (citation omitted), *trans. denied*.

[12] Skeens submitted the following proposed final instruction on causation: "If you find that the defendant's conduct caused the accident that produced the death of the victim, the State has proven the element of 'causation.' However, if you find that someone else's conduct caused the accident, you must find the defendant not guilty." Appellant's App. Vol. 2 at 211. The trial court refused Skeens's instruction and gave three other instructions on causation. Instruction number 7 reads as follows:

> In regard to the First Charge [i.e., level 1 felony neglect of a dependent resulting in death], a Defendant's conduct is legally responsible for causing the death if the State has proven beyond a reasonable doubt that:
> 1. the death would not have occurred without the conduct; and
> 2. the death was a natural, probable, and foreseeable result of Defendant's conduct.
> The State of Indiana is not required to prove that the Defendant's conduct was the sole cause of the death.

Appellant's App. Vol. 3 at 80. Instruction number 8 reads, "In Indiana, a result is deemed foreseeable if it is a natural and probable consequence of the act of the Defendant." *Id*. at 81. And instruction number 9 reads, "Where an intervening cause is claimed as superseding the defendant's actions, the intervening cause must be unforeseeable to relieve the defendant of criminal liability." *Id*. at 82.

[13] On appeal, Skeens argues that the trial court abused its discretion in refusing her instruction and in giving its instructions because the latter embrace the "civil law" concept of proximate cause. Appellant's Br. at 18. But proximate

cause was determined to be the proper standard in *Patel*, the neglect case mentioned above, 60 N.E.3d at 1052, as well as in *Abney v. State*, 766 N.E.2d 1175 (Ind. 2002), the operating-while-intoxicated-causing-death case on which Skeens relies. *See id*. at 1177-78 (noting "the well-settled rule that the State must prove the defendant's conduct was a proximate cause of the victim's injury or death."). Skeens also argues that instructions 7 and 9 "effectively shifted the burden to the defense to show that there was an intervening or superseding cause[,]" Appellant's Br. at 19-20, but she cites no authority to establish that this was contrary to law. Accordingly, this argument is waived. *Whitfield v. State*, 127 N.E.3d 1260, 1268 n.5 (Ind. Ct. App. 2019), *trans. denied*. In sum, Skeens has failed to establish an abuse of discretion. Therefore, we affirm her convictions.

## Section 4 – Skeens has failed to establish that her sentence is inappropriate.

Finally, we address Skeens's request to reduce her sentence pursuant to Indiana Appellate Rule 7(B), which provides that we may revise a sentence authorized by statute if, after due consideration of the trial court's decision, we find that the sentence is inappropriate in light of the nature of the offense and the character of the offender. "Whether we regard a sentence as inappropriate turns on 'the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other factors that come to light in a given case.'" *Kunberger v. State*, 46 N.E.3d 966, 972-73 (Ind. Ct. App. 2015) (quoting *Cardwell v. State*, 895 N.E.2d 1219, 1224 (Ind. 2008)). "[T]he principal role of appellate review is

to 'leaven the outliers,' not achieve the perceived 'correct' result in each case." *Id*. at 973 (quoting *Cardwell*, 895 N.E.2d at 1225). "We therefore 'focus on the forest—the aggregate sentence—rather than the trees—consecutive or concurrent, number of counts, or length of the sentence on any individual count.'" *Id*. (quoting *Cardwell*, 895 N.E.2d at 1225). "The question is not whether another sentence is more appropriate, but rather whether the sentence imposed is inappropriate." *Norton v. State*, 137 N.E.3d 974, 988 (Ind. Ct. App. 2019), *trans. denied* (2020). Skeens bears the burden of persuading us that her sentence is inappropriate. *Kunberger*, 46 N.E.3d at 972.

[15]     "As to the nature of the offense, the advisory sentence is the starting point the legislature has selected as an appropriate sentence for the crime committed." *Id*. at 973. The advisory sentence for a level 1 felony is thirty years, with a range of twenty to forty years. Ind. Code § 35-50-2-4(b). The advisory sentence for a level 6 felony is one year, with a range of six months to two and one-half years. Ind. Code § 35-50-2-7(b). The trial court sentenced Skeens to thirty-five years for the level 1 felony and two years for each level 6 felony, all consecutive, for a total of forty-one years.[2] Skeens asserts that "[t]he nature of this offense is a tragic accident and was not the produce [sic] of care, planning or criminal intent." Appellant's Br. at 23. This disregards the obvious fact that she was charged with and convicted of neglect, and that the legislature has determined

---

[2] Skeens cites a case regarding maximum sentences, which is inapplicable because she did not receive the maximum sentence for any of her crimes.

that neglect resulting in death merits serious penal consequences. Skeens neglected all four of her children, and the presence of multiple victims justifies consecutive sentences. *Cardwell*, 895 N.E.2d at 1225. Moreover, the scale of Skeens's neglect cannot be overstated: she got drunk on whiskey and high on marijuana, loaded her young children in her unsafe van without proper restraints, drove down the highway at nearly ten miles per hour over the speed limit, got into a physical fight with her boyfriend, lost control of the van, and then careened off the road, with tragic results. The nature of Skeens's offenses does not support a reduced sentence.

[16] Analysis of an offender's character "involves a broad consideration of a defendant's qualities. The character of the offender is shown by the offender's life and conduct." *Adams v. State*, 120 N.E.3d 1058, 1065 (Ind. Ct. App. 2019) (citations and quotation marks omitted). Skeens has no prior criminal history, but during her interview for her presentence investigation report, she admitted to having a long history of substance abuse and to driving her children on multiple occasions while under the influence of alcohol and marijuana. As the trial court remarked at the sentencing hearing, "The reality is, Ms. Skeens has not led a law-abiding life, she just never got caught until now." Tr. Vol. 4 at 22. After she was arrested and incarcerated, she snorted methamphetamine that had been smuggled into the jail. When she was released on bond, she used marijuana and alcohol, drinking a fifth of whiskey per day during the week and then stopping so she could have weekend visitation with her surviving children. At sentencing, the trial court made multiple references to what it characterized

as Skeens's "selfish, defiant, combative, and belligerent nature" and her "lack of respect for lawful authority[.]" *Id*. at 25, 27. Skeens has offered nothing that contradicts this assessment. She has failed to persuade us that her sentence is inappropriate in light of the nature of the offenses and her character. Therefore, we affirm her sentence.

Affirmed.

Bailey, J., and Altice, J., concur.